**BANKERS LIFE AND CASUALTY COMPANY, Appellant,**

v.

**J. Edwin LARSON et al., Appellees.**

**No. 16494.**

United States Court of Appeals
Fifth Circuit.

June 30, 1958.

Charles F. Short, Jr., Chicago, Ill., Miller Walton, Miami, Fla. (Brundage & Short, Chicago, Ill., Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, Fla., of counsel), for appellant.

James A. Dixon, Dixon, DeJarnette, Bradford & Williams, Miami, Fla., for appellees, Reserve Life Ins. Co., and others.

Richard W. Ervin, Atty. Gen., State of Fla., Walter E. Rountree, Tallahassee, Fla., E. F. P. Brigham, Special Asst. Atty. Gen., of the State of Florida, for appellee, J. Edwin Larson.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal is from a summary judgment[1] in a suit brought under Sec. 1 of the Sherman Act, as amended, 15 U.S.C.A. § 1 and Sec. 4 of the Clayton Act, 15 U.S.C.A. § 15, to recover treble damages for injury to plaintiff's interstate business by a conspiracy among defendants.

Here insisting that it was impossible for the district judge on this voluminous record of nearly 3000 pages, containing evidence, some at least of the tendencies of, and the inferences from, which support the charges of fraud and conspiracy made in the pleadings, to reach the conclusion announced by him without first, as a fact finder, deciding questions of credibility and choosing between conflicting inferences or conclusions to be drawn from the facts, appellant argues in effect, that this is just another of the all too numerous cases, Hyman v. Regenstein, 5 Cir., 222 F.2d 545, and the cases it cites, in which, by affixing to a decision on the facts an impermissible summary label, the trial judge has deprived the plaintiff of his right of trial by jury and proved once again the truth of the time worn adage that the longest way around is often the shortest way through. Loews, Inc., v. Bays, 5 Cir., 209 F.2d 610, at page 615.

Pointing out that extensive use of pretrial discovery procedure was made by all parties, resulting in the production of many depositions and documents, appellant urges upon us that in stating in his opinion: "The undisputed facts are legally insufficient to show a conspiracy as charged in the complaint.", the district judge really tried the case on the facts and reached his conclusion by the process of rejecting for reasons not stated by him all evidence[2] and all inferences which ran counter to what he considered to be the admitted or undisputed facts.

1. As material here the judgment, reciting that motions for summary judgment had been filed (1) by plaintiff, (2) by defendant J. Edwin Larson, and (3) by the other defendants, and that the court had heard argument of counsel and had considered the pleadings, the depositions, the exhibits, the briefs and reply briefs, and, declaring:

"It is the opinion of the court upon this record: that there is no genuine issue as to a material fact that, as a matter of law, the undisputed facts are legally insufficient to show a conspiracy as charged in the complaint between defendant J. Edwin Larson and Zack Cravey, or any other defendant; that inasmuch as the claim of the plaintiff against the remaining defendants * * * is predicated upon the existence of such a conspiracy, plaintiff is not entitled to recovery against any defendant; and that the case is one for summary judgment." denied plaintiff's motion for summary judgment and granted defendant Larson's motion and that of the other defendants.

2. In his brief, appellant thus sums up the plan of the conspiracy and the method of carrying it out:

"The facts upon which plaintiff predicates the existence of a conspiracy are revealing of gross contempt for legal limitations on official authority and a shockingly mercenary attitude toward bribery and corruption. What on the surface professedly was conceived as a program of cooperative regulation of plaintiff, on examination stands unmasked as a nefarious scheme to destroy plaintiff's business

Setting out in his brief in support of his claim, references, to the report and actions of the committee appointed to investigate plaintiff to extracts from the discovery deposition of Larson, to the correspondence between Cravey and Larson, to what is referred to as the Atlanta meeting of the commissioners on July 18, 1951, and to actions taken by Larson and Cravey against the plaintiff in Florida and Georgia, appellant thus concludes his argument:

"On the basis of the foregoing, which necessarily omits many details, plaintiff urges that there were presented for determination by a jury and not by the court as matter of law at least the following genuine issues as to material facts:

"1. Did Larson, Cravey and the Sammons controlled corporations conspire to destroy plaintiff's business in Georgia, Florida, and other states and to prevent its expansion into states where it was not licensed?

"2. If Larson was not a conspirator, did Cravey and the Sammons controlled corporations so conspire?

"3. If neither Larson nor Cravey was a conspirator, did the Sammons controlled corporations so conspire among themselves?"

Insisting that it is impossible to determine from the court's terse statement whether, by ignoring or finding contrary to them, the lower court rejected the facts relied on by plaintiff, appellant cites and quotes from Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881, at page 884:

"It is apparent from a consideration of the court's findings and conclusions that in determining whether or not there was a genuine issue of fact the court gave no thought to what inferences might reasonably be drawn from the circumstances. The case is largely dependant upon circumstantial evidence. The court also failed to view the evidence, as it should, in a light most favorable to the plaintiffs."

While making common cause against appellant in repelling his assault upon

---

for the benefit of the Sammons controlled corporations.

"Thus there was presented for determination by a jury—not by the court as a matter of law—a genuine issue as to the material fact whether Larson and Cravey, in good faith and with no intent to benefit the Sammons controlled corporations, engaged in and did not overstep the bounds of a program of cooperative regulation of plaintiff, or whether, under the guise of cooperative regulation but in reality for the benefit of the Sammons controlled corporations, they and the corporations conspired to destroy plaintiff's business in Georgia, Florida and other states and to prevent its expansion into states where it was not licensed.

"In the beginning Larson and Cravey apparently joined forces nominally to regulate, and to induce other Insurance Commissioners to regulate, the relationship of plaintiff to the public of the respective states comprising Zones 2 and 3 of a voluntary association known as the National Association of Insurance Commissioners, which frequently is referred to as NAIC. Ostensibly, then, there were at the outset legal and proper motives and purposes. The means employed were of another character.

\*    \*    \*    \*    \*

"The means of purported regulation were threats and the instigation of threats that plaintiff's licenses to do business would not be renewed, or actual refusal of renewal of licenses, at such times and in such ways as would facilitate carefully planned and highly successful concerted efforts by the Sammons controlled corporations to obtain the agency forces and thus the business of plaintiff in various states. To that end Larson and Cravey enlisted the aid of Commissioners of other states, so that the scheme of the conspiracy became national in scope. The Sammons controlled corporations maintained the adherence and cooperation of Larson and Cravey through bribery of commissioners and their employees. Officials of these corporations were active participants in diagramming both the scheme and moves which would assure its success for the benefit of the corporations."

the summary judgment, Larson and his co-defendants, the insurance companies, filed separate briefs in which the approach of each was quite different. Larson, drawing protectingly about himself the cloak of his claimed official immunity from suit for his actions as a state officer, from the assumed vantage point of his claimed untouchability, attacks plaintiff and his cause in language more denunciatory than convincing, more calculated to generate heat than light. In short, instead of meeting the burden cast upon him under this record of showing by argument and discussion that, in disposing of the case by summary judgment, the district court did not deprive plaintiff of his constitutional right of trial by jury, appellee Larson seeks, in part, to do so by sweeping animadversions upon the good faith of plaintiff and his claims. Assuming the very issue which is presented for determination, whether as matter of law the acts complained of by plaintiff as done by Larson were official acts done for the purpose alone of carrying out his official duties and, therefore, he was immune from suit as to them, and not personal acts done as a part of a conspiracy against plaintiff, appellee Larson,— though the district judge did not give this as a reason for his decision and the record does not show plainly, if at all, that as a matter of law this is so —devotes the greater part of his brief to putting forward this claim of immunity.

The other appellees, while putting forward and arguing the same proposition, that concerted official action by agreement between state officials is not within the scope of the prohibitions of the Sherman Act because such prohibitions are directed against private persons' actions and not against actions of state officials, and presenting their case in less ex cathedra, less pontifical and less hortatory fashion, make the additional points set out below [3] in favor of the correctness of the judgment.

Proceeding under these heads in a lengthy brief of more than 100 pages, replete with inferences and conclusions drawn from the swollen record as a whole, they seem to us to argue the case as though it had been fully tried below and the question presented for discussion here was whether a verdict or judgment based upon such a trial should or should not be set aside as without evidence to support it, rather than, as in fact is the case here, whether as matter of law there was or was not a genuine issue as to a material fact, and the case was or was not properly disposed of on summary judgment.

Apparently assuming that on a trial the plaintiff could not have bettered its case, the appellees present their case as though this court must either affirm the judgment out of hand or take upon itself the burden of searching the 3000 pages of record to find therein some justification for a judgment which nei-

---

**3.** (1) The complaint does not allege and the proof does not show any injury to the public, in fact the record shows the contrary.

(2) There is no proof in the record that Mr. Larson and Mr. Cravey engaged in a conspiracy against the plaintiff.

(3) There is no proof in the record that the insurance companies joined in the supposed pre-existing conspiracies between Larson and Cravey with knowledge of the existence of such conspiracies.

(4) If Bradley, one of the Vice-Presidents on whose actions and statements plaintiff's claim is to some extent based, did join in any illegal agreement, he had no authority to do so from the defendant companies and his actions cannot be imputed to them.

(5) They attack, as inadmissible, some of the evidence relied on by plaintiff, including the transcript of the meeting of insurance commissioners and the so-called Bradley reports to his employer.

In addition to these points, a special point is made by the Hartford Indemnity Co., sued as surety of Cravey, that the surety is liable only when the principal is liable and that Cravey, the principal, is not liable either at common law or under any applicable Georgia statute, and the bond does not run to, or cover actions of the kind brought here.

ther the district judge, by opinion or findings, nor the appellees, by brief, have convincingly pointed out.

We cannot agree with this view. On the contrary, viewing the record as a whole and without a line by line examination of it, we are of the opinion that this case is in its nature not susceptible of being disposed of by summary judgment[4] and that, saying so, we could, without more, order the judgment reversed and the cause sent back for trial on the merits.

However, though in the posture of this case, by the failure of the district judge to make and file an opinion or in any other way support his summary disposition of this complicated case, we have been deprived of his aid and assistance, we have, in the light of the briefs, the arguments and the record examined his meager conclusions sufficiently to satisfy ourselves: that no adequate showing has been made that there is any basis in the record for his conclusion that, though a case was stated in the pleadings, the plaintiff was as matter of law not entitled to a trial of the issues tendered in them; and that he erred in his conclusion and in the judgment entered thereon.

Of appellees' point one, of which they make so much in citing and discussing the cases, that the complaint does not allege and the proof does not show any injury to the public and for that reason no case for relief is presented, it is sufficient to say that in our opinion, as aplied to this case, appellees have completely misconceived and misapplied the principle they invoke. As to the complaint, there are clear, definite and full allegations that the conspiracy charged against the defendants was for the purpose and with the result not only of unlawfully restraining plaintiff's trade and commerce among the several states but of suppressing, burdening and obstructing interstate commerce, thus alleging at once both public and private injury.

As to proof, we think it quite clear that here, as in other aspects of the case, appellees have not borne their burden of demonstrating that as matter of law there was no evidence which, if taken in the light most favorable to plaintiff, tended to establish the truth of its allegations.

On the point so strongly relied on by all appellees, that Larson, because of his official position as a state officer, is immune from accountability in this suit, it is sufficient to say that there is no authority, statutory or otherwise, authorizing the insurance commissioners of Georgia or Florida to conspire with persons to restrain commerce or exempting them from suit if they do so,[5] and that Mr. Larson's vigorous denial of responsibility is really based not on any claim that if he did conspire he would nevertheless be immune but on his insistence that everything he did was in the line of duty and within the scope of his authority, as a state officer and not as a conspirator, and that as matter of law there is no evidence to the contrary.

Because the case was erroneously disposed of by summary judgment, the judgment is reversed and the cause is remanded for further and not inconsistent proceedings, including trial on the merits.

4. Cf. Whitaker v. Coleman, 5 Cir., 115 F.2d 305; and Winter Park Tel. Co. v. Southern Bell, 5 Cir., 181 F.2d 341, where the court said:
"We are of the opinion that this case is not one that readily lends itself to such a summary disposition.
"The facts and circumstances, although in no material dispute as to their actuality, reveal aspects from which inconsistent hypotheses might reasonably be drawn and as to which the minds of reasonable men might differ.

"The drawing of inferences and the acceptance of hypotheses arising out of the facts are ordinary attributes that the judicial process has conferred upon the finder of the facts."

5. Cf. Standard Oil Co. of California v. Moore, 9 Cir., 251 F.2d 188; Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315; Floyd v. Gage, 4 Cir., 192 F.2d 137.