**Hylton HARMAN, Trustee of the Coffeyville Loan and Investment Company, Inc., Appellant,**

v.

**The VALLEY NATIONAL BANK OF ARIZONA et al., Appellees.**

**No. 19310.**

United States Court of Appeals
Ninth Circuit.

Dec. 17, 1964.

Thomas Chandler, Chandler, Tullar, Udall & Richmond, Tucson, Ariz., for appellant.

Devens Gust, Gust, Rosenfeld & Divelbess, Phoenix, Ariz., for appellees Valley Nat. Bank of Ariz., C. A. Bimson and J. E. Patrick.

Mark Wilmer, Snell & Wilmer, Phoenix, Ariz., for appellee Arizona Bancorporation.

Philip E. Von Ammon, Fennemore, Craig, Allen & McClennen, Phoenix, Ariz., for appellee First Nat. Bank of Ariz.

Charles R. Hoover, Charles E. Jones, Jennings, Strouss, Salmon & Trask, Phoenix, Ariz., for appellee First Fed. Sav. & Loan Ass'n of Phoenix.

Francis J. Ryley, George Read Carlock, Ryley, Carlock & Ralston, Phoenix, Ariz., for appellees Ariz. Bank and W. R. Montgomery.

Before HAMLEY, JERTBERG, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

Appellant's complaint under section 4 of the Clayton Act, 15 U.S.C.A. § 15, seeking treble damages for alleged violation of sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, was dismissed for failure to state a claim upon which relief could be granted. Appellant declined to amend and the action was dismissed.

The district court did not state its reasons for dismissal. Appellees suggest two possibilities: (1) relief was precluded by Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); and (2) plaintiff was not a "person * * * injured in his business or property by reason of anything forbidden in the antitrust laws" within the meaning of section 4 of the Clayton Act.

We think neither ground necessarily posed an "insuperable bar to relief," and that dismissal for failure to state a claim was therefore improper. Corsican Productions v. Pitchess, 338 F.2d 441 (9th Cir. 1964). See also Sardo v. McGrath, 90 U.S.App.D.C. 195, 196 F.2d 20, 24 (1952); 2 Moore's Federal Practice par. 12.09, p. 2257 ("the motion to dismiss for

failure to state a claim raises matter in bar * * * ").

1. The complaint alleged that appellees induced the Attorney General of the State of Arizona to file an action which resulted in placing Arizona Savings and Loan Association in receivership and closing its business. It is conceded that section 6–423 of the Arizona Revised Statutes authorizes the Attorney General to bring such an action against a building and loan association charged with the "irregularities" specified in A.R.S. § 6–422.

In Noerr the Supreme Court held that "the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." 365 U.S. at 136, 81 S.Ct. at 529. See also Association of Western Railways v. Riss & Co., 112 U.S.App.D.C. 49, 299 F.2d 133, 135 (1962). But see Pennington v. United Mine Workers, 325 F. 2d 804, 817 (6th Cir. 1963), cert. granted 377 U.S. 929, 84 S.Ct. 1333, 12 L.Ed.2d 294. Appellant argues that the governmental activity which the Noerr defendants sought to induce was in itself lawful, whereas the present complaint alleges that the suit induced by appellees was "unlawful and fraudulent," "contrary to all relevant and known circumstances and conditions with respect to the solvency and legal operation" of the Association, and a "secret" suit whereby the Association "was closed without notice in a matter of minutes" contrary to the intent of A.R.S. § 6–423.

■ We agree with appellees that Noerr would apply whether or not the proceeding brought by the Attorney General had substantive merit and complied with statutory procedural prerequisites. In either event, appellees' conduct in informing the Attorney General of alleged "irregularities" and persuading him to take the action which they desired with respect to enforcement of the Arizona statute would be essentially political in nature, and basically dissimilar from the "price fixing agreements, boycotts, market-division agreements, and other similar arrangements" normally held violative of the Act. 365 U.S. at 136, 81 S.Ct. at 529. Moreover, to make Sherman Act liability depend upon ultimate resolution of often difficult questions of law and fact relating to the validity or propriety of solicited governmental action "would substantially impair the power of government to take actions through its legislature and executive that operate to restrain trade" (365 U.S. at 137, 81 S.Ct. at 529), and "would raise important constitutional questions" because of the inevitable burden which such a construction of the Sherman Act would impose upon the right of the people to petition the government for the redress of grievances. 365 U.S. at 138, 81 S.Ct. at 530.

■ Nonetheless, Noerr does not necessarily bar relief under the present complaint. The complaint can be read as alleging that appellees' joint effort to influence the Attorney General was but one element in a larger, long-continued scheme to restrain and monopolize "commercial banking in particular and the financial industry in general within the State of Arizona." Moreover, the complaint alleges that the acts of the Attorney General were those of a participating conspirator. In Parker v. Brown, 317 U.S. 341, 351, 63 S.Ct. 307, 314, 87 L.Ed. 315 (1943), the Court specifically reserved the question of the applicability of the Sherman Act to the case of "a state or its municipality becoming a participant in a private agreement or combination by others for restraint of trade," and Noerr does not hold that the Act would be inapplicable in such a situation.

2. The complaint alleged that Coffeyville Loan and Investment Company, Inc. (CLIC) was engaged in making loans upon real estate secured by first mortgages and deeds of trust, and in the course of this business borrowed large sums from the Arizona Savings and Loan Association. Injury and damage were alleged to have resulted from the refusal of the state court receiver to honor the Association's contractual obligations to

CLIC, a result which appellees "could reasonably foresee."

Appellees argue that the complaint must be rejected under the line of authority holding that "shareholders, creditors, directors and officers of corporations injured by monopolistic practices of competitors," and other "persons incidentally injured by a conspiracy" cannot sue under section 4 of the Clayton Act (Conference of Studio Unions v. Loew's Inc., 193 F.2d 51, 54 (9th Cir. 1951)); or, as it is sometimes put, that the right to sue under section 4 is limited to persons who are "within the target area of the illegal practices * * *." Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358, 365 (9th Cir. 1955). See generally, Pollock, The "Injury" and "Causation" Elements of a Treble-Damage Antitrust Action, 57 Nw.U.L.Rev. 691 (1963).

■ Certainly the limitation upon liability which appellees urge does not appear clearly from the language of section 4, and the Supreme Court has said that the courts "should not add requirements to burden the private litigant beyond what is specifically set forth by Congress * * *." Radovich v. Nat'l Football League, 352 U.S. 445, 453–454, 77 S.Ct. 390, 395, 1 L.Ed.2d 456 (1957). See also Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946). But in any event, the present complaint alleges that the object of the general conspiracy was the unreasonable restraint and monopolization of the Arizona money market in which CLIC had acquired a contractual right to funds, the destruction of which affords the basis for appellant's claim. There is nothing in the allegations of the complaint which would preclude proof that the alleged conspiracy was aimed, in part, directly at the refinancing arrangements between CLIC and the Association.

■ 3. We do not hold that appellant has alleged a triable claim. The present allegations of the complaint are clearly inadequate. They are disconnected and incomplete. They do not sufficiently particularize the general charge of conspiracy to restrain and monopolize the Arizona financial market. They do not define the relationship between the alleged general conspiracy and those particulars which are set out, the joint activity culminating in the receivership of the Association, or the injury and damage to appellant. They do not disclose the nature of the contractual agreements with the Association which were allegedly repudiated by the receiver to appellant's injury, and these agreements are described as being between the Association and third persons without setting out the relationship of CLIC to the latter.

■ However, "mere vagueness or lack of detail is not ground for a motion to dismiss, but should be attacked by a motion for a more definite statement." 2 Moore's Federal Practice par. 12.08, pp. 2245–46. And since despite these and other deficiencies it cannot be said with certainty from the face of the present complaint that appellant will be unable to allege a triable claim, it was error to dismiss the action for failure to state a claim upon which relief could be granted.

It may be well to repeat, in the words of Judge Barnes, that a motion to dismiss is not "the only effective procedural implement for the expeditious handling of legal controversies. Pretrial conference; the discovery procedures; and motions for a more definite statement, judgment on the pleadings and summary judgment, all provide useful tools for the sifting of allegations and the determination of the legal sufficiency of an asserted claim" short of trial. Rennie & Laughlin, Inc. v. Chrysler Corp., 242 F.2d 208, 213 (9th Cir. 1957). See also Shull v. Pilot Life Ins. Co., 313 F.2d 445, 447 (5th Cir. 1963).

Reversed.