420 F.2d 341
 SUN VALLEY DISPOSAL CO., Inc., a corporation, Appellant,
v.
SILVER STATE DISPOSAL CO., Clark Sanitation, Inc., Disposal Transportation, Inc., Henderson Disposal Service, Inc., Disposal Investments, Inc., Lester L. LaFortune, John Isola, and Alfred Isola, Appellees.
 No. 22762.
 United States Court of Appeals Ninth Circuit.
 December 17, 1969.
 
 1
 Morton Galane (argued), of Galane & Wines, Las Vegas, Nev., for appellant.
 
 
 2
 Frederick P. Furth (argued), Jon N. Richardson, Richard H. Hicks, Joseph L. Alioto, San Francisco, Cal., Thomas A. Foley, Johnson & Steffen, Las Vegas, Nev., for appellees.
 
 
 3
 Before CHAMBERS and BROWNING, Circuit Judges, and BYRNE,* District Judge.
 
 BYRNE, District Judge:
 
 4
 Sun Valley Disposal Co., Inc., appeals from the summary judgment entered against it in the district court. Sun Valley operated a garbage pick-up and disposal service and container leasing service in the unincorporated area of Clark County, Nevada. Sun Valley competed with appellee Clark Sanitation, Inc., in the garbage collection business in this area. Clark obtained an exclusive franchise for garbage pick-up and disposal for the unincorporated territory of the county, resulting in the termination of Sun Valley's business. Sun Valley brought suit for violations of Sections 1 and 2 of the Sherman Act, (15 U.S.C. §§ 1, 2) seeking treble damages for the loss of its business.
 
 
 5
 Clark Sanitation and its codefendants, related corporations, moved for summary judgment on two grounds: (1) that the acts complained of were sanctioned by the Nevada State Legislature and the Clark County Commission; and, (2) that the acts did not involve interstate commerce. The district court sustained the motion for summary judgment on both grounds and awarded judgment to the defendants.
 
 
 6
 Appellant argues that the defendants pursued an anti-competitive scheme culminating in the award of the exclusive franchise by the County Commission. It contends that the misrepresentations in Clark's bid for the franchise, as well as the participation in the conspiracy by some of the county commissioners, make the actions complained of subject to the federal antitrust laws. Appellant relies upon Bankers Life and Casualty Co. v. Larson, 257 F.2d 377 (CA 5, 1958), and Harman v. Valley National Bank of Arizona, 339 F.2d 564 (CA 9, 1964), for the proposition that the conspiratorial conduct of the commissioners is subject to the antitrust laws. In Bankers Life, a summary judgment for the defendant was reversed where there was a genuine issue of fact whether he acted in his official capacity, or whether he acted as part of a conspiracy against the plaintiff. In Harman the court held that although the antitrust laws do not apply to attempts to influence legislative or executive action, citing Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) a claim for relief is stated where the plaintiff alleges that the state official was a co-conspirator and where the alleged effort to influence the official was part of a larger scheme to monopolize the industry.
 
 
 7
 The Supreme Court decisions have eroded the authority of Bankers Life and Harman. In Noerr, supra, the court held that there was no violation of the Act where there were attempts to influence passage or enforcement of laws. A group of railroads allegedly conspired to influence the adoption of laws injuring the trucking industry. The Supreme Court followed Noerr in United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In Pennington, defendant coal mining company counterclaimed that the union violated the antitrust laws by conspiring with the large mining companies to drive the small producers out of the market. The union and large companies allegedly influenced the Secretary of Labor to set minimum wages too high for the small companies. This was allegedly part of a plan which included price-cutting and attempts to exclude small companies from the market by refusing to lease them coal lands and by urging the Tennessee Valley Authority to buy only from companies which paid a minimum wage much higher than in other industries, thus making it difficult for small companies to compete in the TVA term contract market. The court held that "(J)oint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act." E. W. Wiggins Airways, Inc. v. Massachusetts Port Authority, 362 F.2d 52 (CA 1, 1966) also follows Noerr in holding that valid municipal action is without the scope of the federal antitrust laws.
 
 
 8
 As suggested by the district court, local government units such as city councils and county boards are seldom completely free from personal interest and outside influences, but the Sherman Act was not intended to regulate this type of activity. There is support for this view in that Noerr, decided after Bankers Life, supra, holds that so long as the official's action is itself lawful, the action is without the scope of the federal antitrust laws, even if the motive for the action was a personal one. It should also be noted that Pennington lessens the authority of Harman, relied upon by appellant. Pennington held that efforts to influence public officials are not illegal even if part of a broader anti-competitive scheme. Harman was based on this view that an attempt to influence an official when part of a larger scheme is subject to the federal antitrust laws.
 
 
 9
 A plaintiff cannot, by charging a conspiracy, turn what is basically a claim of violation of state law into a federal antitrust case. This conclusion finds support in the general reluctance of the federal courts to act before state remedies have been exhausted where there is adequate state review. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed 1424; Public Service Commission of Utah v. Wycoff Co., Inc., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291.
 
 
 10
 The appellee's primary reliance is on the contention that the acts complained of do not involve interstate commerce or have a substantial effect upon interstate commerce.
 
 
 11
 There are two tests to determine whether interstate commerce is involved: (1) whether the acts complained of occurred within the flow of interstate commerce; or, (2) whether the acts complained of while wholly intrastate, substantially affected interstate commerce. Las Vegas Merchant Plumbers Ass'n v. United States, 210 F.2d 732, 739-740 n. 3 (CA 9, 1954). Keeping these tests in mind, appellant has three grounds to his claim that interstate commerce is involved. First, appellant claims that his container rental activity is a separate sub-market and that he acquired the containers from out of state. Second, appellant argues that the defendants engaged in an interstate business which benefited from their anti-competitive trade practices. Third, appellant relies on defendant Henderson Disposal's operations in Page, Arizona.
 
 
 12
 In Page v. Work, 9th Cir., 290 F.2d 323, the court held that the business of publishing a newspaper is not necessarily an interstate business merely because the supplies required to carry on the business, i. e., newsprint, ink, etc., were acquired from out of state. The court held that the test was not whether the acts complained of affected a business engaged in interstate commerce, but whether the acts affected the interstate commerce part of the business. Applying this principle to the instant case, the business of container leasing being wholly local in character, there was no effect on the interstate part of appellant's business. Consequently, there is no jurisdiction under the "flow of commerce theory". Appellant's reliance upon Washington State Bowling Prop. Ass'n v. Pacific Lanes, Inc., 356 F.2d 371 (CA 9, 1966), is not really relevant to the test of whether the acts complained of occurred in the flow of interstate commerce. Pacific Lanes actually only restates the second test for determining whether interstate commerce is present, i. e., whether the acts complained of substantially affect interstate commerce.
 
 
 13
 Appellant argues that the anti-competitive acts of the appellees affected interstate commerce in that appellant now no longer obtains the supplies which it formerly obtained from out of state. The acquisition of these supplies entails an "incidental flow of supplies in interstate commerce", Lieberthal v. North Country Lanes, Inc., 332 F.2d 269 (CA 2, 1964). In Lieberthal, the court held that the flow of bowling equipment from out of state to a local bowling alley conducting a local business was only incidental and did not transform local activity into interstate activity. Similarly, in Marks Food Corp. v. Barbara Ann Baking Co., D.C., 162 F.Supp. 300, rev'd on other grounds, 274 F.2d 934 (CA 9, 1960), the court held that defendant's bakery business was not transformed into an interstate business merely because it bought machinery and other equipment from out of state. These principles control the present case. Appellant conducted a wholly local garbage disposal and container leasing business. Appellant supplied this business with equipment from out of state. This fact alone, does not turn what was really a local activity into an interstate one.
 
 
 14
 Appellant's contention that the Page, Arizona, operation gives the court interstate commerce jurisdiction is also without merit. There does not appear to be a connection between the business in Arizona and the business in Clark County.
 
 
 15
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Honorable William M. Byrne, United States Senior District Judge, Central District of California, sitting by designation
 
 
 BROWNING, Circuit Judge (concurring in part):
 
 16
 I concur, but solely on the ground that there was no genuine issue of fact material to whether defendants had participated in a scheme to unreasonably restrain or monopolize trade; and that the facts did not establish such a scheme under the applicable principles of substantive law.
 
 
 17
 United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), holds that efforts to influence public officers in the exercise of their official powers do not violate the Sherman Act even though they are part of a broader scheme which does violate the Act. To the extent that Harman v. Valley National Bank, 339 F. 2d 564 (9th Cir. 1964), holds to the contrary it is no longer good authority.
 
 
 18
 However, Harman also holds that the Sherman Act may reach the acts of a government official if he is himself a participating conspirator in a scheme which violates that Act (339 F.2d at 566). Pennington does not hold to the contrary. As the Supreme Court noted, the public official involved in Pennington was "not claimed to be a co-conspirator." 381 U.S. at 671, 85 S.Ct. at 1594. Cf. S & S Logging Co. v. Barker, 336 F.2d 617 (9th Cir. 1966) (involving the personal immunity of the government official from suit for damages for wrongful acts committed by him in performance of his official duties).
 
 
 19
 Plaintiff contends that one or more Clark County Commissioners participated in the scheme to unreasonably restrain and monopolize trade, but the evidence upon which plaintiff relies as circumstantial proof of the participation of the Commissioners in the scheme, including the inferences which might be drawn from the subsidiary facts, is not sufficiently substantial to raise a triable issue of fact.
 
 
 20
 Plaintiff also contends that defendants participated in a number of predatory activities, including below-cost selling and territorial price discrimination, with the purpose and effect of injuring plaintiff; and that these activities were independent of defendants' successful efforts to obtain the exclusive franchise, and hence were not excluded from the Sherman Act by the Noerr-Pennington doctrine. Again, however, an examination of the record reveals that the proof relied upon by plaintiff to support these allegations is so insubstantial that it does not raise a triable issue of fact.