WESTERN WASTE SERVICE SYSTEMS, Plaintiff-Appellant,

v.

UNIVERSAL WASTE CONTROL and Waste Management, Inc., Defendants-Appellees.

No. 77–3131.

United States Court of Appeals, Ninth Circuit.

March 4, 1980.

Rehearing Denied April 28, 1980.

P. Richard Meyer, Meyer, Vucichevich & Cimala, Phoenix, Ariz., for plaintiff-appellant.

Joseph V. Giffin, Chicago, Ill., argued, for defendants-appellees; Paul G. Ulrich, Lewis & Roca, Phoenix, Ariz., Joseph V. Giffin, Chadwell, Kayser, Ruggles, McGee & Hastings, Chicago, Ill., on brief.

Before KENNEDY and ANDERSON, Circuit Judges, and CLAIBORNE,* District Judge.

KENNEDY, Circuit Judge:

The narrow issue in this case is whether a garbage collection business in Phoenix, Arizona sufficiently affects interstate commerce to fall within the protection of section 1 of the Sherman Act. Finding this court's previous decision in *Sun Valley Disposal Co. v. Silver State Disposal Co.,* 420 F.2d 341 (9th Cir. 1969), to be controlling, the district court granted a pretrial motion to dismiss the action, holding "there is no sufficient nexus with interstate commerce to support Sherman Act jurisdiction." The plaintiff brought this appeal. We conclude

that *Sun Valley* is distinguishable from the case before us, and that the standards announced in intervening Supreme Court opinions establish that there is jurisdiction here. We vacate the judgment of the trial court and remand the cause for further proceedings.

Appellant Western Waste Service Systems (Western Waste), the plaintiff below, is an Arizona corporation engaged in the waste disposal business in the Phoenix metropolitan and adjoining areas. Universal Waste Control (Universal) is a California corporation engaged in the waste disposal business in the same area. Universal is a wholly-owned subsidiary of defendant Waste Management, Inc., a Delaware corporation.

Western Waste brought suit against Universal and Waste Management, claiming that Universal had monopolized and attempted to monopolize the waste disposal business in Phoenix by providing waste disposal services at prices substantially below cost. Western Waste also charged that Universal conspired with other competitors to eliminate Western Waste from the waste disposal business. Universal moved to dismiss for lack of subject matter jurisdiction. After discovery was taken on this issue, the district court granted Universal's motion, holding that the garbage collection business was a local one which did not affect interstate commerce.

■ In this appeal and for purposes of Universal's motion, we must read the pleadings and evidence adduced in discovery in the light most favorable to Western Waste.[1]

---

* Honorable Harry E. Claiborne, United States District Judge for the District of Nevada, sitting by designation.

1. Universal's argument that the district court had authority to inquire into and determine the facts relating to Sherman Act jurisdiction at this stage of the proceedings was expressly rejected by the Supreme Court this term in *McLain v. Real Estate Bd.,* —— U.S. ——, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). In *McLain,* the defendant also moved to dismiss for lack of jurisdiction. After discovery was taken on this issue, the district court granted the motion and the Fifth Circuit affirmed. In vacating the judgment, the Supreme Court ruled that the

pleadings, as supplemented by the evidence produced in discovery, had to be read in the light most favorable to the party against whom the motion was made. The inquiry was said to be whether there was a sufficient basis for plaintiff to proceed to trial to establish Sherman Act jurisdiction. In concluding that the jurisdictional requirements had been met, the Court declared:

It is axiomatic that a complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 [78 S.Ct. 99, 101–102, 2 L.Ed.2d 80]

The following facts must be taken as true in ruling on Universal's motion. Both Western Waste and Universal acquire a substantial amount of their garbage collection equipment from out of state. All trucks and truck bodies were manufactured outside of Arizona and most of the rubbish containers purchased were also manufactured outside of Arizona. Some of the waste material which is collected by Universal is paper which is hauled to paper brokers in Phoenix for shipment out of state. Scrap wood is also collected by Universal and shipped to recyclers. Approximately four tons of such wood were sent by Universal to recyclers from June 1, 1976 to May 31, 1977. The recyclers make this material into wood chips which are shipped out of state.

Both Western Waste and Universal are distributors of garbage compactors manufactured by out-of-state companies for sale or lease within Phoenix. In 1975, Western Waste became the Phoenix dealer of Blackwelder, a California manufacturer of compaction equipment. Blackwelder's compactor was new to the market and had unique features. Western Waste sent two of its employees to California for instruction in the selling and servicing of Blackwelder compaction equipment. In 1976 Universal used its market power and the power of its parent company to induce Blackwelder to terminate Western Waste's distributorship and choose Universal as its exclusive distributor. Subsequently, Universal advertised itself as Blackwelder's exclusive distributor in Phoenix.

The standards which we must apply to these facts are familiar. It is established that the reach of the Sherman Act is as inclusive as the constitutional limits of Congress' power to regulate interstate commerce. *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 64 S.Ct.

1162, 88 L.Ed. 1440 (1944); *Thornhill Publishing Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730 (9th Cir. 1979); *Rasmussen v. American Dairy Ass'n*, 472 F.2d 517 (9th Cir.), *cert. denied*, 412 U.S. 950, 93 S.Ct. 3014, 37 L.Ed.2d 1003 (1973). As judicial construction of the scope of the commerce clause has expanded, so has the reach of the Sherman Act. *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 202, 95 S.Ct. 392, 402, 42 L.Ed.2d 378 (1974); *Rasmussen, supra*, 472 F.2d at 521. "[T]he conduct of the defendants is within the jurisdictional reach of the Sherman Act if Congress can prohibit that conduct under the commerce clause." *Id.*

Section 1 of the Sherman Act prohibits contracts, combinations, and conspiracies "in restraint of trade or commerce among the several States." 15 U.S.C. § 1 (1976). This phrase defines both the conduct proscribed by the statute and its jurisdictional reach. *Gough v. Rossmoor Corp.*, 487 F.2d 373 (9th Cir. 1973). In resolving the jurisdictional issue, our task is to assume, without deciding, that the conduct complained of constitutes a violation of the Sherman Act and then to determine whether that conduct could be regulated under the commerce power. *Rasmussen, supra*, 472 F.2d at 522.

To establish Sherman Act jurisdiction, the district court required Western Waste to show that Universal's alleged antitrust violations had a substantial effect on interstate commerce. This test, however, was rejected by the Supreme Court this Term in *McLain v. Real Estate Bd.*, —— U.S. ——, 100 S.Ct. 502, 62 L.Ed.2d 411 (1980). In *McLain* real estate purchasers brought suit against real estate brokers in the New Orleans area, claiming that the brokers had fixed their commissions in violation of the

(1957); see 5 Wright & Miller, Federal Practice and Procedure: Civil §§ 1202, 1205–1207, 1215–1224, 1228. This rule applies with no less force to a Sherman Act claim, where one of the requisites of a cause of action is the existence of a demonstrable nexus between the defendants' activity and interstate commerce. Here what was submitted to the District Court shows a sufficient basis for satisfying the Act's jurisdictional requirements under the effect on commerce theory so as to entitle the petitioners to go forward. We therefore conclude that it was error to dismiss the complaint at this stage of the proceedings.

—— U.S. at ——, 100 S.Ct. at 511.

Sherman Act. The district court granted defendants' motion to dismiss for lack of subject matter jurisdiction, 432 F.Supp. 982 (E.D.La.1977), and the Fifth Circuit affirmed. 583 F.2d 1315 (5th Cir. 1978). In vacating the judgment, the Supreme Court unanimously held that the defendants' brokerage activities substantially affected interstate commerce so as to confer Sherman Act jurisdiction. The Court held that it was not necessary for the alleged antitrust violations complained of to have affected interstate commerce as long as defendants' business activities, independent of the violations, affected interstate commerce. The Court declared:

> To establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce generated by respondents' brokerage activity. Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy to fix commission rates, or by those other aspects of respondents' activity that are alleged to be unlawful. The validity of this approach is confirmed by an examination of the case law. If establishing jurisdiction required a showing that the unlawful conduct itself had an effect on interstate commerce, jurisdiction would be defeated by a demonstration that the alleged restraint failed to have its intended anticompetitive effect. This is not the rule of our cases. See *American Tobacco Co. v. United States*, 328 U.S. 781, 811 [66 S.Ct. 1125, 1139, 90 L.Ed. 1575] (1946); *United States v. Socony Vacuum Oil Co.*, 310 U.S. 150, 225, n.59 [60 S.Ct. 811, 846, 84 L.Ed. 1129] (1940). A violation may still be found in such circumstances because in a civil action under the Sherman Act, liability may be established by proof of *either* an unlawful purpose or an anti-competitive effect. *United States v. United States Gypsum Co.*, 438 U.S. 422, 436 n.13 [98 S.Ct. 2864, 2864, 57 L.Ed.2d 854] (1978); see *United States v. Container Corp.*, 393 U.S. 333, 337 [89 S.Ct. 510, 512, 21 L.Ed.2d 526] (1969); *United States v. National Assn. of Real Estate Boards*, 339 U.S. 485, 489 [70 S.Ct. 711, 714, 94 L.Ed. 1007] (1950); *United States v. Socony Oil Co., supra*, 310 U.S. 150 at 224–225 n.59 [60 S.Ct. [811], at 844–846, 84 L.Ed. 1129].

—— U.S. at ——, 100 S.Ct. at 509.

■ The standard announced by the Supreme Court must, of course, govern our decision in this case. Applying this test to the facts that we must accept as true for the purpose of Universal's motion, we conclude that the pleadings and evidence adduced by Western Waste at this stage of the proceedings provide more than a sufficient basis for Western Waste to proceed to trial to establish Sherman Act jurisdiction. We believe that the facts establish not only that Universal's rubbish collection business substantially affected interstate commerce, but also that the alleged antitrust violations substantially affected interstate commerce.[2] Under *McLain* it is unnecessary to establish that the alleged antitrust violations substantially affected interstate commerce, but when, as here, this effect is alleged, it is a strong indicator that the defendant's business has an interstate impact.

Universal's acts directly impeded a line of interstate commerce. Before Universal's acts, Western Waste was engaged in the purchase of garbage compaction equipment from an out-of-state supplier. Universal used its market power to attempt to terminate this relationship. Shortly thereafter, Western's dealership was cancelled and Universal advertised that it was the supplier's exclusive distributor in Phoenix.

2. The dissent argues that *McLain* stands for the proposition that a party suing under the Sherman Act must demonstrate a substantial nexus between the *plaintiff's* business activities and interstate commerce. We disagree. The Supreme Court made clear there that the focus of the inquiry is on the *defendant's* business. The fact that the opinion in *Sun Valley* directed its analysis to determining whether the plaintiff's business affected interstate commerce provides a further basis for concluding that its test for Sherman Act jurisdiction has been rejected by the Supreme Court.

Universal spent $69,680 in 1975 and $356,061 in 1976 for equipment purchased out of state. Western Waste spent $88,335 and $124,007 during these respective years for out-of-state equipment. This evidence demonstrates that Universal's business substantially affected interstate commerce. It demonstrates, moreover, that the alleged antitrust violations had a substantial effect on interstate commerce. If Universal succeeds in its alleged attempt to drive Western Waste out of business, Western Waste's purchases will be totally eliminated. *See Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 744, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338 (1976). A reasonable inference from the record is that the alleged antitrust violations reduced Western Waste's purchases during the periods in question.

Universal hauls several tons of waste which it collects to paper brokers and recyclers that ship these materials out of state. This evidence also demonstrates Universal's effect on interstate commerce as these shipments were the beginning point for a significant line of interstate commerce. If Universal succeeds in its alleged attempt to drive Western Waste out of business, the number of suppliers from whom the dealers may purchase such scrap materials for out-of-state shipment will diminish. With fewer suppliers in the market, the suppliers of such scrap materials will be able to restrict supply and raise their prices with a concomitant reduction in the interstate commerce of such materials. *See id.*

Universal contends, however, that this case is controlled by our decision in *Sun Valley Disposal Co. v. Silver State Disposal Co.*, 420 F.2d 341 (9th Cir. 1969). In that case this court wrote:

> Appellant conducted a wholly local garbage disposal and container leasing business. Appellant supplied this business with equipment from out of state. This fact alone does not turn what was really a local activity into an interstate one.

*Id.* at 343. In *Sun Valley*, the court required the plaintiff to show that the alleged antitrust violation affected interstate commerce. As we have noted above, this reasoning was rejected by the Supreme Court in *McLain*. Furthermore, in the intervening Supreme Court case of *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), the Court held that acts which affect the out-of-state purchases, financing, and revenues of intrastate businesses provide a sufficient basis for Sherman Act jurisdiction. In any event the facts here are sufficiently different from those in *Sun Valley* so as to confer jurisdiction on the district court under the Sherman Act. First, a direct restraint on a line of interstate commerce is present here while none was present in *Sun Valley*. Second, Universal hauls several tons of the waste which it collects to scrap dealers and paper brokers which ship these materials out of state. Universal's argument that its role is somehow incidental to the shipping of these materials out of state and that this defeats jurisdiction was expressly rejected by the Supreme Court in *Rex Hospital* and *McLain*. In *McLain* the Supreme Court declared that jurisdiction under the Sherman Act is not defeated by a plaintiff's failure "to quantify the adverse impact of defendant's conduct." *McLain, supra*, —— U.S. at ——, 100 S.Ct. at 510.

Third, a substantial amount of garbage collection equipment, including trucks, truck bodies and containers is purchased from out of state each year. We noted in *Rasmussen v. American Dairy Ass'n*, 472 F.2d 517 (9th Cir.), *cert. denied*, 412 U.S. 950, 93 S.Ct. 3014, 37 L.Ed.2d 1003 (1973), that "[t]he opinion [in *Sun Valley*] discloses none of the underlying business facts upon which [its] conclusion rests, and it may well be that the supplies moving in interstate commerce were an economically insignificant part of the total service rendered." *Id.* at 527. In *Rasmussen* we held that when all the ingredients of a product have been obtained from interstate commerce, then actions undertaken to restrain trade in that product sufficiently affect interstate commerce to confer jurisdiction under the Sherman Act. We noted that "[i]n this

area perhaps more than in most, each case must turn on its own facts." *Id.* at 526.[3]

Finally, Universal finances almost all of its equipment purchases by borrowing from Waste Management in Illinois. Universal made interest payments to Waste Management which amounted to $178,624 in 1975 and $123,505 in 1976. In addition, Universal paid management and corporate service and development fees to Waste Management in Illinois totalling $130,100 in 1975 and $145,100 in 1976. Revenues collected by Universal are transferred to an account in California from which approximately $300,000 per month is transferred to Waste Management in Illinois. No such out-of-state financing or remission of revenues to out-of-state sources was present in *Sun Valley*. The interstate flow of these funds could reasonably be expected to fluctuate in direct proportion to Universal's success in conducting its alleged antitrust violations.

The intervening Supreme Court cases and the material differences in the facts of this case from the facts in *Sun Valley* establish that the district court had jurisdiction over Western Waste's claim. It is possible that the evidence relied upon by Western Waste to establish jurisdiction at this stage will be rejected at trial by the finder of fact. Nothing we say here should be taken to indicate that we have indeed found the facts to be in Western Waste's favor. We also express no opinion on whether the matters alleged constitute antitrust violations. That is a determination to be made in another proceeding. We do hold that "what was submitted to the District Court shows a sufficient basis for satisfying the [Sherman] Act's jurisdictional requirements under the effect on commerce theory so as to entitle the [plaintiff] to go forward." *McLain, supra,* —— U.S. at ——, 100 S.Ct. at 511.

The judgment of the district court is VACATED and the cause REMANDED for further proceedings consistent with this opinion.

CLAIBORNE, District Judge, Sitting by Designation (dissenting):

This case demonstrates perfectly the "Hobson's choice" which a United States District Judge sometimes faces in attempting to render a decision. The Court below, in dismissing the complaint on the grounds of want of subject matter jurisdiction on a motion for summary judgment, held that the case of *Sun Valley Disposal Co. v. Silver State Disposal ·Co.,* 420 F.2d 341 (9th Cir. 1969) was so indistinguishable as to be controlling. The Court was correct. The problem Judge Craig faced was that the *Sun Valley* opinion, arguably, is incorrect as a matter of law. As a District Court Judge in the Ninth Circuit, I recognize the dilemma which the lower Court faced; my brother Craig acted as I would have, which is to follow controlling Ninth Circuit authority which, however questionable, has not been explicitly overruled.

The fact that the two cases are indistinguishable is readily apparent. *Sun Valley* involved a Sherman Act complaint as between two garbage disposal and container leasing services in Clark County, Nevada, and an affirmance of a granting of a motion for summary judgment in favor of the defendants on the grounds of want of subject matter jurisdiction. The Ninth Circuit held: 1) The acts complained of did not occur within the flow of interstate commerce, since the business of container leasing is wholly local in character; the acts complained of did not affect any "interstate commerce part" of plaintiff's business; 2)

**3.** The dissent suggests that our opinion in *Rasmussen* failed to define the term "substantial effect on interstate commerce" and suggests that en banc proceedings are necessary to do this. Our opinion in *Rasmussen*, however, comprehensively and correctly discusses this standard, *see* 472 F.2d at 521-24, 526-28, and the intervening Supreme Court decisions discussed in the text reinforce our view that the standard articulated there is correct.

Even if, as the dissent suggests, the opinions in *Sun Valley* and *Rasmussen* can be viewed as establishing conflicting tests to determine whether out-of-state purchases provide a sufficient basis for Sherman Act jurisdiction, the Supreme Court clearly embraced the *Rasmussen* approach in the intervening case of *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 744, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338 (1976).

Plaintiff conducted a wholly local garbage disposal and container leasing business, and the mere fact that it supplied this business with equipment from out of state did not substantially affect interstate commerce, since it alone does not turn what was really a local activity into an interstate activity. 420 F.2d at 343.

Like *Sun Valley*, the instant case involves the business of refuse hauling and container leasing within Maricopa County, Arizona, a business which is indisputably intrastate in nature; neither Appellant nor Appellee Universal services any accounts outside of that county. And, like *Sun Valley*, the Appellant at bar ultimately has shown nothing more than the mere fact that it has purchased equipment and supplies which have moved in interstate commerce.

However, the majority takes the positions first, that the *Sun Valley* case has been somehow overruled by implication in subsequent Ninth Circuit and Supreme Court opinions; and second, that the *Sun Valley* case is factually distinguishable from the case at bar. I disagree with both views. It is more accurate to conclude first, that the veracity of *Sun Valley* has always been seriously questionable; second, that the Ninth Circuit, in distinguishing *Sun Valley*, has caused considerable confusion as to the meaning of "substantial effect on interstate commerce"; and third, the appropriate manner in which to dispose of this appeal is to affirm but to recommend rehearing *en banc* so that the full panel can address itself to the first two concerns.

As to the "factually distinguishable" view, the majority distinguishes *Sun Valley* on two bases: first, a direct restraint on a line of commerce was demonstrated herein but not in *Sun Valley*; and second, that Universal hauls wood and paper waste by-products as a beginning point for an ancillary "but significant" line of commerce.

As to the first point, I see no distinction conceptually between the garbage collection business in Clark County, Nevada and the garbage collection business in Maricopa County, Arizona. Moreover, in terms of specific facts and figures, the impact on interstate commerce in terms of real dollars as between the two cases is similar. Plaintiff proved in *Sun Valley* that it spent roughly $40,000/year on an average for equipment from out-of-state sources for fiscal years 1961–1965;[1] Plaintiff/Appellant herein proved that it spent roughly $100,000/year for fiscal years 1976–1977 on "interstate" equipment.

As to the second point, the facts herein demonstrate that the recycling businesses in question, and not the Appellant, cause the wood and paper waste by-products to move in interstate commerce and, further, that this aspect of Appellant's business is quite secondary and incidental to its primary purpose of garbage hauling and container leasing. Like the Court below, I would rely upon *John Kalin Funeral Home, Inc. v. Fultz*, 313 F.Supp. 435, 438 (W.D. Wash.1970), *aff'd.*, 442 F.2d 1342 (9th Cir. 1971), *cert. denied*, 404 U.S. 881, 92 S.Ct. 210, 30 L.Ed.2d 162 (1971) and *United States v. Yellow Cab Co.*, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947)[2] in refuting the majority's distinction.

As to the "overruled by implication" view, the majority states that *Sun Valley*

1. These figures appear on p. 11 of Appellant's Opening Brief in *Sun Valley*, and are admitted as being correct on p. 26 of Appellee's Brief therein. The fact that these figures were in no way referred to in the *Sun Valley* opinion should be a source of concern to the Judges of this Circuit, for reasons hereinafter mentioned.

2. *Yellow Cab* involved a Sherman Act action alleging a conspiracy to control principal taxicab companies in Chicago. Plaintiffs therein attempted to demonstrate a nexus with interstate commerce by showing that the local taxicabs transported people to and from their homes who had just traveled/were about to travel in interstate commerce. The Supreme Court held that these facts failed to establish the requisite jurisdictional facts under the Sherman Act. 332 U.S. at 234, 67 S.Ct. at 1568. *Yellow Cab* clearly controls the situation at bar with respect to establishing jurisdiction on Appellant's hauling of by-products to local recycling centers. The majority's reliance in this regard upon *McLain v. Real Estate Board of New Orleans, infra*, is clearly misplaced since the *McLain* opinion does not even refer to *Yellow Cab* in passing.

was decided on the basis of a test which was expressly disapproved in the recent case of *McLain v. Real Estate Board of New Orleans, Inc.,* —— U.S. ——, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). This is not entirely correct; in fact, the two cases are not at all inconsistent. The *McLain* Court did away with the notion that a plaintiff must prove a substantial nexus between a *defendant's unlawful conduct* and interstate commerce in order to establish subject matter jurisdiction under 15 U.S.C. § 1; instead, to establish the jurisdictional element of a Sherman Act violation, a plaintiff need only demonstrate a *substantial nexus* between *plaintiff's business activities* and interstate commerce. Cf. 100 S.Ct. at 509 (emphasis supplied). But clearly, a substantial part of the *Sun Valley* holding, *supra*, is that the appellant therein's *business activities* were of a substantially local nature, and that the fact that appellant therein purchased some equipment in interstate commerce did not establish a *substantial nexus* between those essentially local activities and interstate commerce. Thus, if *Sun Valley* is no longer good law, *McLain* is not the reason why.

Similarly, and contrary to the suggestion of the majority, there is nothing in *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 that controls the disposition herein. That case came before the Supreme Court on the pleadings alone, unlike the case at bar,[3] and the Supreme Court held in *Rex Hospital* that an "indirect effect on interstate commerce" does not make the action *per se* inactionable under the Sherman Act; rather, the fact that complainant's allegations fairly claimed that the conspiracy, if suc-

cessful, would place "unreasonable burdens on the free and uninterrupted flow" of interstate commerce, made it sufficient to withstand a motion to dismiss. 426 U.S at 747, 96 S.Ct. at 1853.[4] The majority attempts to apply the *Rex Hospital* case to the situation at bar by stating that the record herein supports a reasonable inference that Universal, in allegedly attempting to drive Western Waste out of business, reduced Western Waste's purchases during the year in question. The record suggests otherwise. Appellant's own facts and figures demonstrate that its purchases of equipment in interstate commerce during the years in question have increased, and Appellant's agents and employees have admitted several times in deposition that Appellant has experienced no problem thus far in obtaining equipment.

The cases which actually deserve the most comment to the situation at bar, apart from *Sun Valley,* are *United States v. Employing Plasterer's,* 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618 (1954) and *Rasmussen v. American Dairy Association,* 472 F.2d 517 (9th Cir. 1973). In the *Employing Plasterer's* case, the United States Supreme Court, in an opinion which predated *Sun Valley* by fifteen years, quoted from the complaint therein which it held to state a cause of action:

> [Defendants] do approximately 60% of the plastering contracting business in the Chicago area of Illinois . . . Substantial quantities of this material are produced in in other states, bought by Illinois building materials dealers and shipped into Illinois . . . The practical effect of all this is a continuous and

3. The *Rex Hospital* Court noted in footnote 5 that even if the complaint therein adequately alleged an effect on interstate commerce, further proceedings could demonstrate no substantial effect thereon, thereby warranting dismissal of the action. See 426 U.S. at 748, n. 5, 96 S.Ct. at 1853, n. 5.

4. Appellees herein suggest that there may be some inconsistencies between *Rex Hospital* and *McLain.* I am likewise concerned. *Rex Hospital* seems to set the standard of Sherman Act jurisdiction as any nexus between a plaintiff's

activities and interstate commerce plus a defendant's restraint of trade which substantially and adversely affects interstate commerce (cf. 96 S.Ct. at 1852–1853), where as *McLain* sets the standard of a substantial and/or "demonstrable" nexus between a plaintiff's activities and interstate commerce. (*Supra* 99 S.Ct. at 509, 511.) Perhaps the Supreme Court has implicitly suggested alternate formulations of the same jurisdictional test, but language in the *McLain* opinion would seem to indicate otherwise. (See Majority Opinion above.)

almost uninterrupted flow of plastering materials from out-of-state origins to Illinois job sites for use there by plastering contractors. Restraint or *disruption of plastering work in the Chicago area thus necessarily affects this interstate flow of plastering materials adversely.*

347 U.S. at 189, 74 S.Ct. at 453. Needless to say, there seems to be a large inconsistency between *Sun Valley* and *Employing Plasterer's*, which is made all the more significant by the fact that the *Sun Valley* opinion did not even address the *Employing Plasterer's* case in passing.[5]

Even more troublesome, however, is the subsequent Ninth Circuit opinion in *Rasmussen*. The Ninth Circuit held in *Rasmussen* that the complaint in that suit, alleging that the ingredients of plaintiff's "filled milk" product other than water were brought into the state from other states, alleged a sufficient relationship between defendant's alleged conduct and interstate commerce to justify holding that the conduct "substantially affected" interstate commerce. 472 F.2d at 526–527.[6] The *Rasmussen* Court distinguished *Sun Valley* by noting that each Sherman Act case must turn on its own facts, and stated that the *Sun Valley* opinion discloses none of the underlying business facts existent in *Rasmussen* (e. g., the fact that more than 50% of the "filled milk" product was comprised of ingredients shipped in interstate commerce) and, therefore, the "incidental" effect on interstate commerce which existed in *Sun Valley* was not present in *Rasmussen. Id.*

While it is true that the *Sun Valley* opinion discloses none of the underlying business facts, the truth is that appellant in *Sun Valley* discovered and disclosed those facts to the *Sun Valley* court, who proceeded to ignore them. Thus, the distinction is quite artificial, at least from the practicing lawyer's point of view. More troublesome, however, is the *Rasmussen* court's inability to define what is meant in this Circuit by a "substantial effect on interstate commerce." I recognize the principles that each Sherman Act case must turn on its own facts, and that jurisdiction is not defeated by plaintiff's failure to quantify the adverse impact of a defendant's conduct. Nonetheless, neither of these is very specific or helpful; if there is a way to harmonize *Sun Valley, Rasmussen* and the case at bar, it is in a definition of "substantial effect" on "interstate commerce" which has not been heretofore stated. Otherwise, I am at a loss to explain why the appellant in *Sun Valley* failed to meet its burden of proof as to the "substantial effect" element of Sherman Act jurisdiction, but the appellant herein did not so fail.

In sum, I see only two courses of action which are feasible. One is to overrule *Sun Valley*, which this panel has no power to do. Cf. *Ellis v. Carter*, 291 F.2d 270, 273 (9th Cir. 1961). The other is to redefine "substantial nexus between plaintiff's activities and interstate commerce," so as to harmonize and shed some much needed light on *Sun Valley, Rasmussen* and the case at bar. In either case, because of the controlling nature of *Sun Valley*, the only proper thing to do procedurally is to affirm and to address these problems in a rehearing *en banc.*[7]

For these reasons, then, I would affirm.

---

5. The *Sun Valley* Court relied principally upon *Page v. Work*, 290 F.2d 323 (9th Cir.), *cert. denied*, 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76 (1961); both cases have since been disapproved in other courts. See *Mascaro & Sons, Inc. v. O'Hara, Inc.*, 565 F.2d 264, 266 (3rd Cir. 1977).

6. The specific holding of *Rasmussen, supra* must now be considered questionable in light of *McLain.*

7. Since I am not an active Judge of the Ninth Circuit, I have no power to suggest a rehearing *en banc.*