**ALABAMA HOMEOWNERS, INC., a corporation, Plaintiff-Appellant,**

v.

**FINDAHOME CORPORATION, a corporation, and Southern Publishing Company, a corporation, Defendants-Appellees.**

No. 79–3875.

United States Court of Appeals,
Fifth Circuit.
Unit B

March 25, 1981.

James L. Shores, Fairhope, Ala., for plaintiff-appellant.

John B. Levy, New Orleans, La., for Findahome Corp.

Robert S. Edington, Mobile, Ala., for Southern Pub. Co.

Before FAY and HATCHETT, Circuit Judges, and GROOMS *, District Judge.

FAY, Circuit Judge:

Plaintiff-appellant, Alabama Homeowners, Inc., sued defendant-appellees, Findahome Corporation and Southern Publishing Company, alleging that appellees' refusal to run appellant's advertisement in their publications, unless appellant removed all price information therefrom, constituted a conspiracy in restraint of trade in violation of Section 1 of the Sherman Act.[1] This appeal followed the District Court's grant of appellees' motion for a directed verdict at the close of appellant's case. Having concluded that appellant failed to establish any proof of a substantial effect on interstate commerce, we affirm the dismissal for lack of federal jurisdiction.

At the time this suit was instituted, appellant was an Alabama corporation engaged in the real estate brokerage business. Appellee Findahome Corporation (hereinafter Findahome) was an Alabama corporation. Appellee Southern Publishing Compa-

---

* District Judge of the Northern District of Alabama, sitting by designation.

1. 15 U.S.C. § 1. That section provides, in pertinent part, the following:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

ny (hereinafter Southern) was a sole proprietorship having its principal place of business in Florida. Both appellees published magazines which were buyer's guides to residential real estate in Mobile and Baldwin Counties in Alabama. The magazines, which were distributed twice monthly, were available without charge in local grocery stores, banks, beauty parlors, and similar locations.[2]

Appellant corporation was formed in January, 1979, and began advertising with appellee Findahome in February. Appellant's advertisements were published in both of Findahome's monthly issues for February and March. That advertisement contained, in addition to other information, the fact that appellant offered its brokerage services for a "flat fee"[3] of $985.[4] Appellant was the only local broker operating on this flat fee commission basis. When appellant submitted its advertisement for the March 23rd issue, he received a copy of a letter sent to all real estate brokers from Mrs. Allene Wolf, the magazine's publisher, indicating that future advertisements could not include specifics about fees or commissions, and that any advertisements containing such information would be rejected. This policy applied to those brokers who previously had included their percentage commission, as well as to appellant. Thereafter, Findahome refused to run appellant's advertisements containing the fixed price commission, but never refused to publish any other advertisement in which that information was deleted.[5]

Appellant's business relationship with appellee Southern was substantially less clear. Apparently, appellant had not attempted to advertise in Southern's magazine prior to the policy change by Findahome. Appellant contacted Southern, allegedly at the request of Findahome, to determine if the former would run appellant's advertisement with the price information included. What transpired next is disputed, but given our conclusion that a factual resolution is unnecessary and the fact that this appeal is from a directed verdict, we will take the facts as they are presented by both parties in the best light for appellant. After several unsuccessful attempts to contact a Southern representative, appellant reached a Miss Paula Armstrong, an employee of Southern. Miss Armstrong went to appellant's office to pick-up an advertisement, but upon discovering that the $985 commission fee was included, declined to accept it. According to appellant's testimony, Miss Armstrong said, "Well, from the information that I have from my office, Mr. Wolf is not accepting your ad [with the commission price included] anymore for Findahome, and we can't accept it, either." Record on Appeal at 48 Volume III. Thereafter, appellant never attempted to run an advertisement with Southern with the commission price deleted.

Appellant filed this suit shortly after the two magazines rejected its advertisement as it contained commission price information. Appellant alleged that appellees acted in

2. This type magazine is commonly referred to as a "throw-away." They contain only advertising of the various real estate brokers. They contain no substantive textual material.

3. A flat fee commission is juxtaposed to a percentage commission. In the case of the former, the seller pays a predetermined amount to the broker at the time of the sale, irrespective of the actual amount for which the property is sold, whereas with the latter, the commission is a percentage of the sales price. The flat fee is generally thought of as a discount service and is not widely employed in the real estate business. Appellant asserts that the reason appellees wanted to prevent him from competing is because he, unlike the rest of appellees' customers, used this flat fee commission.

4. One of the reasons that Findahome alleges it rejected appellant's advertisement is that the representation that the $985 was a flat fee was untrue. Findahome asserts that the $85 non-refundable payment made prior to the sale is in fact a listing fee rather than a commission. Since we resolve this case on jurisdictional grounds, we do not reach the merits of that argument.

5. It does not appear that appellant ever submitted advertisements to Findahome with the commission fee deleted. Though we do not reach the merits of this case, we think it significant to note that Findahome never refused to run appellant's advertisement with the commission fee deleted.

concert to restrain trade. In addition to offering evidence of the facts recited above, appellant offered evidence of the existence of the Mobile County Board of Realtors, a trade association consisting of 191 or 192 real estate brokerage firms, with some 1500 members. Appellant also offered to show that members of that board brokered sales involving millions of dollars, a good portion of which were VA or FHA financed. In response, appellees defended on the ground that appellant had (1) failed to establish sufficient effects on interstate commerce to support federal jurisdiction, (2) failed to offer any evidence of the existence of a conspiracy, (3) failed to show how appellant had been injured, (4) contractually agreed to allow appellee to edit the advertisement in the manner which it sought to do, and (5) misrepresented in its advertisement that the $985 was a commission, when in fact $85 of that amount was a non-refundable listing fee. At the close of appellant's case, the District Court granted appellees' motion for a directed verdict, on the grounds that, assuming the existence of federal jurisdiction, the appellant had failed to offer sufficient evidence from which reasonable men could find the existence of either a conspiracy or of anti-competitive conduct.

■ The threshold inquiry, and the dispositive issue in this case, is whether there is sufficient interstate commerce to authorize the exercise of federal jurisdiction. It must be remembered that the absence of substantial interstate commerce does not simply make a case less worthy of consideration by federal courts, it renders those courts powerless to act irrespective of the presence or absence of a meritorious claim. Appellant asserts that the Supreme Court's decision last term in *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980), supports its position that interstate commerce is present. We conclude that appellant's reliance on *McLain* is misplaced.

■ *McLain* further explains the proof required when a Sherman Act plaintiff seeks to avail himself of federal jurisdiction on the "effect on commerce" rather than the "in commerce" theory of jurisdiction. *McLain* involved a Sherman Act Section 1 complaint, alleging a conspiracy to fix prices, brought by certain real estate purchasers, both individually and as representatives of a class, against certain real estate trade associations and real estate brokerage firms. The Supreme Court said in that case that a plaintiff seeking to invoke federal jurisdiction need not establish that the complained of practice had a substantial effect on interstate commerce, rather "a plaintiff must establish ... that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce." 444 U.S. at 242, 100 S.Ct. at 509. In *McLain*, the Supreme Court held that the plaintiffs had sufficiently proven that the business of the particular defendants in the action effected interstate activities, by way of large loans from out-of-state banks and title insurance from national title institutions, to authorize the exercise of federal jurisdiction. In the present action, appellants seek to employ *McLain* as an umbrella underneath which any business having the most tangential relationship with the real estate business would be presumed to have a substantial effect on interstate commerce. *McLain*, does not stand for that proposition, and that is not the law. During the trial, in its appellate brief and during oral argument to this Court, appellant argued that the evidence offered at trial as to the real estate business in Mobile established interstate commerce. That evidence included the fact that the appellant sold one home to a non-resident of Alabama, that there was a real estate brokerage trade association in Mobile, that the members of that association successfully sold many homes, some of which had VA and FHA financing, and that appellant was not a member of that association. That is precisely the type of obfuscatory evidence that the Supreme Court in *McLain* said could not establish substantial

effects on interstate commerce.[6] The Court said,

> Although the cases demonstrate the breadth of Sherman Act prohibitions, jurisdiction may not be invoked under that statute unless the relevant aspect of interstate commerce is identified; it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce.

444 U.S. at 242, 100 S.Ct. at 509. The issue in the present case is very clear: whether the businesses of the appellees in question, publication of real estate guides to Mobile and Baldwin Counties, had a substantial effect on interstate commerce. On that point, appellant did not offer even a scintilla of evidence.[7] Moreover, the evidence offered by plaintiff as to the existence of other effective advertising media even precluded the drawing of a reasonable inference that appellees' magazines had some causal relationship to the sale or purchase of real estate. Accordingly, we hold that the District Court should have dismissed this case for lack of jurisdiction.

Though our resolution of the jurisdictional issue is dispositive of the action, some comments about the trial are in order. The district judge, concerned as he was with the question of jurisdiction, allowed the appellant to range far and wide during its case-in-chief. The Court did this out of the quite proper desire to allow appellant to establish whatever evidence it may have had that could in any way support its claim. At the close of appellant's case, we believe the District Court was left with the same feeling that we have after reviewing the record; that appellant's case was an illusion, a shadowy image that, when exposed to the light of judicial scrutiny, dissolved to its incorporeal state.[8] The evidence at trial related to everything except how these particular appellees had conspired or agreed to do anything that in anyway injured the appellant. In short, reasonable men could not have concluded from the evidence presented that there was a conspiracy, that there was anti-competitive conduct, or that appellant was damaged.[9] Accordingly, had our conclusion as to the existence of federal jurisdiction been different, we most surely would have affirmed the District Court's

---

**6.** As counsel for appellees, as well as the District Court and this Court, repeatedly pointed out, neither the Mobile County Board of Realtors nor any of its members were defendants in this suit. The appellant repeatedly attempted to "bootstrap" his interstate commerce argument by proving the conduct of these non-parties. At one point during the trial the efforts to prove interstate commerce by implicating the Board became so strained that the following interchange took place between Mr. Joe Locke, a witness and the Executive Vice President of the local realty board, and the judge in relation to a question by appellant's counsel:

> THE WITNESS: Your Honor, if my Board or my Multiple Listing Service is going to be made a part of this case, I think we are entitled to be cited and let me have counsel and protect us in this instance.
> THE COURT: You are not a part of this lawsuit. I don't know what he is driving at. I'm trying to find out how he thinks you have anything to do with it. I don't want you [appellant's counsel] to use this litigation as an exploratory means of doing discovery work for something else, now.

Record on Appeal at p. 130, Vol. III.

**7.** There was no evidence presented that any sale had ever resulted from any of the advertisements in either publication. Indeed, the only evidence on these advertisements is that possibly one owner had one ad in his possession when listing his property for sale. Record on Appeal at p. 77, Vol. III.

**8.** The factual context in which this suit was filed is particularly perplexing. This is not a case involving a thriving and successful business being brought to its knees by the pernicious practices of a predatory competitor. This suit was filed less than four months after appellant corporation came into existence and less than three months after it began doing business. At the time suit was filed, appellant had eight listings. The record further indicates that appellant had not even sold the first parcel of real property prior to the commencement of this action. While these facts would not otherwise prejudice the merits of appellant's case, they raise a question as to the presence of a meritorious claim.

**9.** Had we reached the merits in this case, our standard of review would be that set out by this Court in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969).

granting of appellees' motion for a directed verdict.

The dismissal is affirmed, albeit on different grounds than in the first instance.

Affirmed.