Srini **MALINI, M. D.**

v.

**SINGLETON & ASSOCIATES, Edward B. Singleton, M. D., St. Luke's Episcopal Hospital, Baylor College of Medicine, Houston Radiology Associated, James E. Harrell, M. D., the Methodist Hospital.**

**Civ. A. No. H–78–1870.**

United States District Court, S. D. Texas, Houston Division.

May 29, 1981.

Carol Nelkin, Nelkin & Nelkin, Houston, Tex., for plaintiff.

Charles T. Nelson, Vinson & Elkins, Houston, Tex., for the Methodist Hospital.

B. J. Bradshaw, Fulbright & Jaworski, Houston, Tex., for other defendants.

## ORDER

CIRE, District Judge.

Plaintiff Srini Malini, M. D., is a licensed physician, certified in radiology, who prac-

tices medicine in Houston. Defendant hospitals have denied Dr. Malini's application for staff privileges, and she complains that the denials are attributable to contracts which grant Singleton and Associates the exclusive right to perform radiology services at St. Luke's Hospital, and Houston Radiology Associated the exclusive right to perform radiology services at Methodist Hospital. In this suit brought under the Sherman Act, 15 U.S.C. §§ 1–2, Dr. Malini charges that the contracts are unlawful agreements in restraint of trade, and that they are attempts to monopolize the provision of radiology services. She also complains of the individual defendants and of Baylor College of Medicine for conduct in furtherance of unlawful conspiracies.

Pursuant to Rule 12(d), Fed.R.Civ.P., plaintiff by motion requested the Court to make a preliminary determination of subject matter jurisdiction; defendants in their answers had claimed that the Court lacked jurisdiction and that the complaint failed to state a claim upon which relief could be granted. Subsequently defendants filed a motion for summary judgment, claiming that on the undisputed facts there exists no Sherman Act jurisdiction. For the reasons set forth below, the Court concludes that plaintiff has properly invoked Sherman Act jurisdiction, and accordingly orders that defendants' motions for dismissal and for summary judgment are denied.

The prohibitions of the Sherman Act extend as far as the power of Congress to regulate commerce. The Act reaches not only those activities that are "in" interstate commerce, but those otherwise local activities that substantially "affect" interstate commerce as well. *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). The distinction between the two types of activities is not always clearly drawn,[1] and conse-

---

1. See Kitner, 1 *Federal Antitrust Law* § 6.7 (Anderson 1980) for a discussion of the resulting confusion. Semantic clarity eludes even the most articulate courts and commentators,

since it is axiomatic that a violation which occurs "in commerce" also "affects commerce." *Id.* n. 48, citing *J. P. Mascaro & Sons,*

quently courts are not always certain whether to proceed on an "in commerce" or "effect on commerce" basis. At least one Court has analyzed the jurisdictional issue in a similar case from the "in commerce" prospective.[2] This Court believes, however, that the present case is best analyzed as an "effect on commerce" case; the provision of medical services is an essentially local activity which may touch and influence the flow of commerce.

■ A plaintiff in an "effect on commerce" case may invoke Sherman Act jurisdiction if she first identifies the relevant area of interstate commerce, and then demonstrates that the commerce so identified is substantially affected by defendant's activities. In other words, if defendant's activity is not itself in interstate commerce, it must have a substantial effect on an activity that is. *McLain v. Real Estate Board of New Orleans*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). It may be said that "the critical inquiry is into the adequacy of the nexus between respondents' conduct and interstate commerce that is alleged in the complaint." *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738 at 742 n.1, 96 S.Ct. 1848 at 1851 n.1, 48 L.Ed.2d 338 (1976).

It is not enough that a plaintiff *presume* a relationship between a local activity and an activity admittedly in commerce. For example, the plaintiffs in *McLain, supra,* established not only that real estate financing and title insurance are activities occurring in commerce, but that defendants' local brokerage activities had a substantial impact on those interstate aspects of the transactions. In contrast, the critical nexus was not established in *Alabama Homeowners, Inc. v. Findahome Corp.*, 640 F.2d 670 (5th Cir. 1981). There, the plaintiffs sought to "employ *McLain* as an umbrella underneath which any business having the most tangential relationship with the real estate business would be presumed to have a sub-

stantial effect on interstate commerce." *Id.* Thus a case against the publishers of a local real estate listing guide failed to allege an adequate jurisdictional predicate where there was no evidence that the guide generated or in any way affected real estate sales at all, much less that the guide affected the interstate aspects of real estate sales. Rather than presume the nexus, a plaintiff whose allegations are challenged must present evidence beyond the pleadings to satisfy the jurisdictional test.

Some question has arisen about the precise nature of the showing which plaintiff must make. *McLain* states that a plaintiff has met the test by establishing the nexus outlined above, without having to "make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy [to fix commission rates] ...." 444 U.S. at 242, 100 S.Ct. at 509. This passage does not negate the requirement of a relationship between defendants' conduct and an identifiable aspect of interstate commerce. *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715 (10th Cir. 1980). Rather, it means only that a plaintiff need not show for jurisdictional purposes that the conspiracy was successful, i. e., that it did in fact cause some restriction on interstate commerce. The reason for this is that liability may rest on an unlawful purpose as well as on a measurable result. *McLain, supra.* It is enough if plaintiff shows a "logical connection as a matter of practical economics between the unlawful conduct and interstate commerce." *Crane, supra,* 637 F.2d at 723.

■ The Court is satisfied that plaintiff has met the jurisdictional requirements in this case. She identifies several relevant areas of interstate commerce which she claims are substantially affected by the local provision of radiology services. First, she asserts that she has purchased many thousands of dollars' worth of equipment and supplies through interstate channels,

*Inc. v. William J. O'Hara, Inc.*, 565 F.2d 264 (3d Cir. 1977).

2. *Zamiri v. William Beaumont Hospital*, 430 F.Supp. 875 (E.D.Mich.1977) (physician's local

receipt of Medicare and Medicaid payments is integral part of interstate transaction, applying *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)).

and that the defendants' conduct, which allegedly limits the number of referrals she receives and consequently restricts her purchases, has an effect on this interstate activity.[3] Similarly, she points to the interstate payment for radiology services by government agencies and private insurance carriers; the plaintiff claims that the local restraints and monopolization have a substantial anticompetitive effect on the amount, source, and recipients of these payments.[4] Dr. Malini further asserts that she has been referred many patients from out-of-state who have traveled to Texas for consultation with her, but that such referrals are far fewer in number than they would be if her practice were not limited to outpatient services.[5] She similarly alleges that the defendant hospitals admit large numbers of out-of-state patients whose radiology treatment is monopolized by the defendant physicians.[6]

Plaintiff adequately demonstrates a logical relationship, in terms of practical economics, between the defendants' conduct and the interstate commerce identified. She need not plead financial ruin, *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 S.Ct. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), nor must the alleged substantial effect meet a quantitative minimum, *Feminist Women's Health Center v. Mohammad*, 586 F.2d 530 (5th Cir. 1978) (substantial effect alleged by clinic buying $4,000 worth of out-of-state supplies and performing services costing $12,000 on out-of-state patients). What she does allege is that her interstate purchases are reduced and that the existing flow of commerce is monopo-

lized in violation of the Act. These effects cannot be said to be insubstantial.

Defendants' disingenuous affidavits do not detract from the jurisdictional significance of Dr. Malini's allegations. These affidavits [7] purport to refute her showing of a substantial effect by "proving" that her admission on the hospital staffs would not make any difference in the volume of supplies purchased by plaintiff or defendant, nor would her staff privileges make a difference in the number of patients treated at the hospitals. The thrust of the affidavits is that only a given number of people require radiology services, and they will receive those services regardless of who provides them. If the number of radiology patients is static, argues the defendants, how can the interstate aspects of radiology services be affected by defendants' conduct? The answer is twofold. First, the number of patients is not necessarily static. It may be that Dr. Malini's admission to the hospital staffs would lead to a change in the number of patients seeking radiology treatment or a change in their interstate traveling to obtain such treatment. Secondly, the defendants' argument overlooks the crux of a monopolization charge: who participates in the flow of commerce is at the heart of a § 2 case. A claim that the pie is only so big regardless of the number of pieces cut ignores the Congressional belief that free and healthy competition will lead to bigger pies. *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959).[8]

A review of the cases supports this Court's conclusion that it has subject mat-

---

**3.** In answers to interrogatories, Dr. Malini identifies over $100,000 worth of equipment purchased from out-of-state vendors, and lists several items of equipment which she would purchase if she were on the staff at defendant hospitals.

**4.** The plaintiff has received over $10,000 in insurance and government payments. The amount so received by defendants is at this point unknown because defendants have objected to answering plaintiff's interrogatories until the jurisdictional issue is resolved. Plaintiff alleges that defendants' receipts are substantial, and this allegation is not disputed.

**5.** She identifies the out-of-state residences of those patients she has treated.

**6.** Dr. Malini lists several physicians who have told her they would refer their hospitalized patients to her if she were on the staff and thus able to practice in the hospitals.

**7.** The affiants include the individual defendants and various representatives of the hospitals.

**8.** In *Klor's*, the Supreme Court rejected affidavits from the manufacturer, distributor, and retailer of home appliances which purported to prove that since the appliances were readily

ter jurisdiction over Dr. Malini's claim. In *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), the Court found a substantial effect on interstate commerce where the defendants' conduct blocked a planned expansion of plaintiff hospital. Out-of-state equipment and supply purchases, potential insurance payments, and financing for the expansion were the activities in commerce that would be affected by the defendants' acts. Similarly, plaintiffs in *Feminist Women's Health Center v. Mohammad*, 586 F.2d 530 (5th Cir. 1978), met the jurisdictional test with allegations that a boycott by physicians threatened to curtail their interstate purchases and the provision of services to out-of-state patients.

The Ninth Circuit, in *Boddicker v. Arizona State Dental Assoc.*, 549 F.2d 626, *cert. denied*, 434 U.S. 825, 98 S.Ct. 73, 54 L.Ed.2d 83 (1977), faced the question of whether plaintiff alleged a restraint of trade substantially affecting interstate commerce where he complained of an arrangement which made membership in the American Dental Association a condition precedent to membership in the state dental society. The Court found sufficient allegations that the dentist's practice was impaired, resulting in fewer interstate purchases. The test was also met by allegations that the multistate scope of ADA membership, with dentists paying dues and participating in programs, was for jurisdictional purposes substantially affected by the agreement.

Cases more nearly on point include *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715 (10th Cir. 1980), in which a pathologist complained of defendants' refusal to permit him to evaluate any pathology specimens from patients in the defendant hospitals. The effect on interstate commerce allegations were the same as those put forth by Dr. Malini: equipment and supplies, payments for services, interstate travel by patients. The Court concluded that Dr. Crane "should have the opportunity to adduce evidence and to prove, if he can, that success of defendants' alleged conspir-

acy would spell, in practical economic terms, appreciable and 'unreasonable burdens on the free and uninterrupted flow' of commerce in the three interstate channels specified." *Id.* at 725 (citations omitted).

Also on point is *Robinson v. Magovern*, 456 F.Supp. 1000 (W.D.Pa.1978), in which a cardiac surgeon complains of a hospital which has denied him staff privileges and which has an exclusive contract with another physician to perform all cardiac surgery in the hospital. The Court found that interstate purchases and insurance payments were enough to satisfy the jurisdictional nexus with interstate commerce. And in *Ballard v. Blue Shield of West Virginia*, 543 F.2d 1075 (4th Cir. 1976), chiropractors invoked Sherman Act jurisdiction over their claim that physicians and hospitals conspired to deny insurance coverage for their services, thus reducing their purchases and promoting higher costs to patients forced to seek alternative treatment or travel out-of-state to receive insured chiropractic treatment. Finally, in *United States Dental Institute v. American Assoc. of Orthodontists and The American Dental Association*, 396 F.Supp. 565 (N.D.Ill.1975), a private school offering instruction to dentists in the specialty of orthodontia claimed that the defendants conspired to prevent the school's accreditation and to exclude the school's students from those authorized to perform orthodontia. The Court found jurisdiction in the plaintiff's allegations that many of its students traveled interstate to attend its seminars and that the students' dental practices were expanded by the advanced training; the conspiracy affected these areas of interstate commerce by discouraging enrollment in the school.

Defendants cite several cases which are inapplicable or distinguishable. *Harron v. United Hospital Center, Inc.*, 522 F.2d 1133 (4th Cir. 1975), *cert. denied*, 424 U.S. 916, 96 S.Ct. 1116, 47 L.Ed.2d 321, involved a radiologist who lost an exclusive contract for operating the hospital's radiology department, but he was not denied staff privileges. With no discussion of what facts, if any, supported the Sherman Act claim, the

available to customers, plaintiff's exclusion from the competitive market could have no

appreciable effect on interstate commerce.

trial court dismissed; the dismissal was affirmed. The Fourth Circuit affirmed a similar dismissal in *Capili v. Shott*, 620 F.2d 438 (1980), noting only that there were no facts alleged which showed that a hospital's decision to enter into an exclusive contract had a substantial effect on interstate commerce. This Court cannot conclude that the Fourth Circuit would have dismissed had facts similar to those alleged here been presented to it. The holding in *Ballard v. Blue Shield of W. Virginia, supra*, suggests otherwise.

Finally, the defendant cites *Moles v. Morton F. Plant Hospital*, 617 F.2d 293 (5th Cir. 1980). In that case a Sherman Act dismissal was affirmed without published opinion. Thus this Court cannot ascertain which of the trial court's reasons prompted the affirmance: a lack of a conspiracy, or lack of substantial interstate effect based on allegations of interstate insurance payments. At any rate, this Court finds a satisfactory combination of factual allegations pointing to a substantial interstate effect; such a combination was missing in *Moles*.

It must be remembered that this decision is for jurisdictional purposes only, and is not dispositive on the merits of this case. With that in mind, the Court finds Sherman Act jurisdiction over Dr. Malini's claim, and defendants' motion to dismiss, or in the alternative for summary judgment, is accordingly DENIED.