Dr. Harold P. McDONALD, Jr., and the McDonald Urology Clinic, P.C., Plaintiffs,

v.

SAINT JOSEPH'S HOSPITAL OF ATLANTA, INC., et al., Defendants.

Civ. A. No. C80–1295A.

United States District Court, N. D. Georgia, Atlanta Division.

June 10, 1981.

On Motions To Dismiss Count I Sept. 29, 1981.

---

R. M. Bernhardt, P. C., Atlanta, Ga., for plaintiffs.

A. Felton Jenkins, Jr., Gordon A. Smith, Atlanta, Ga., for St. Joseph's Hospital of Atlanta.

Edwin M. Pearce and Robert Smith and Mikel L. Purcell, Poole, Pearce, Cooper & Smith, Atlanta, Ga., for Georgia Baptist Hospital.

Daryll Love and Anthony L. Cochran, Powell, Goldstein, Frazier & Murphy, Atlanta, Ga., for Dr. Earnest W. Franklin, III.

Robert L. Pennington, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for Dr. Ted. L. Staton.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiffs filed suit against defendants alleging in Counts I and II of their complaint violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 and Section 2 of the Clayton Act, 15 U.S.C. § 13(a). These antitrust allegations arose out of the defendants' denial of Dr. McDonald's applications for staff privileges at Saint Joseph's Hospital (St. Joseph's) and at Georgia Baptist Hospital (Georgia Baptist). Jurisdiction is based on 15 U.S.C. §§ 4 and 15 and 28 U.S.C. § 1337. The case is presently before the court on the motions of defendants St. Joseph's, Franklin, and Staton to dismiss Counts I and II for failure to state a claim. A dismissal of Counts I and II would also require dismissal of plaintiffs' fifteen state law claims since this court has only pendent jurisdiction over these claims.

Dr. McDonald is one of four urological surgeons employed by The McDonald Urology Clinic, P.C. (the Clinic). He and the Clinic allege that the defendants' denials of staff privileges to him were the result of "a conspiracy between and among defendants to prevent him from practicing surgery in the northern and eastern parts of Atlanta." Plaintiffs contend that this activity amounted to a group boycott of Dr. McDonald and represented an attempt by defendants to monopolize urological surgery in the alleged relevant market. Plaintiffs also allege an intent on the part of defendants to fix prices for urological surgery at an artificially high level. These charges are based on plaintiffs' belief that Dr. McDonald was denied staff privileges because he utilizes a unique form of urological surgery (cryosurgery) developed by him "which is less expensive, allows for shorter hospitalization time, ... and lessens the use of support personnel and equipment." Plaintiffs contend that Dr. McDonald's use of this surgical technique would force the individual defendants to lower their fees or alter their surgical technique and would cause the hospital defendants to lose revenue by reduction in hospital expenses for urological surgery.

The defendants have styled their motion to dismiss as being brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. However, the basis of their motions with regard to plaintiff Dr. McDonald is jurisdictional in nature.[1] Defendants contend that Dr. McDonald has failed to establish any nexus between defendants' refusal to grant him staff privileges and interstate commerce. Rather, they maintain that the jurisdictional allegations in the complaint are all stated in terms of the alleged effects of defendants' activities on the Clinic's activities in interstate commerce. See generally, *Hospital Building Company v. Rex Hospital Trustees*, 425 U.S. 738, 744, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338 (1976).

In responding to defendants' motions to dismiss, plaintiffs have presented nine statistics showing the substantial involvement of the hospital defendants in interstate commerce. These statistics are identified only as having been learned through discovery.[2] Plaintiffs did not initially articulate their reasons for introducing these

1. The court notes that the cases reflect some confusion as to whether motions such as these should be brought under Rule 12(b)(6) or Rule 12(b)(1), lack of subject matter jurisdiction. See, e. g., *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 240–41, 246, 100 S.Ct. 502, 508–509, 511, 62 L.Ed.2d 441 (1980). Indeed, defendants Franklin and Staton have summarized their argument with regard to Dr. McDonald as showing a failure to establish subject matter jurisdiction. See also *Williamson v. Tucker*, 645 F.2d 404, 412–417 (5th Cir. 1981); *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 732–35 (9th Cir. 1979).

2. Plaintiffs' discovery request has been filed with the court but defendants' responses thereto have not been made part of the record.

facts but apparently they represent an attempt to comply with the Supreme Court's ruling in *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). The Supreme Court ruled there on page 242, 100 S.Ct. on page 509 that: "To establish jurisdiction a plaintiff must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings either that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce."

In the reply briefs filed with this court, the defendants have not addressed the effect under *McLain*[3] of plaintiffs' proffer of evidence. Accordingly, the court will postpone ruling on the defendants' motions to dismiss Count I (Dr. McDonald's antitrust claim) until the parties, plaintiffs and moving defendants, have presented briefs discussing the effect, if any, of *McLain* on the issue of whether Dr. McDonald has sufficiently established the jurisdictional element of his antitrust claim so as to withstand defendants' motions to dismiss. Such briefs shall be filed with this court by July 2, 1981.

In addition, the plaintiffs are instructed to file with the court the discovery responses upon which they have relied, the same being adequately identified for easy reference by the court. If the parties deem it necessary, the court will also receive further argument and citations to authority on the point raised by defendants Franklin and Staton that Dr. McDonald lacks standing to complain of defendants' alleged price-fixing since he is not within the area of the economy which would be injured by such an agreement. *See Kemp Pontiac-Cadillac, Inc. v. Hartford Automobile Dealers' Association*, 380 F.Supp. 1382 (D.Conn.1974).

With regard to the Clinic's antitrust claim in Count II, the defendants argue that the Clinic lacks standing to seek recovery of treble damages in a private antitrust suit. All parties are agreed that the broad language of 15 U.S.C. § 15 that "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore in any district court of the United States in the district in which the defendant resides ... and shall recover threefold the damages by him sustained" has been greatly restricted by the federal courts. See, e. g., *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980); *Jeffrey v. Southwestern Bell*, 518 F.2d 1129, 1131 (5th Cir. 1975); *Kauffman v. The Dreyfus Fund, Inc.*, 434 F.2d 727 (3rd Cir. 1970); *Walker Distributing Co. v. Lucky Lager Brewing Co.*, 323 F.2d 1 (9th Cir. 1963). See also *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263, 92 S.Ct. 885, 892, 31 L.Ed.2d 184 (1973).

Likewise, the parties acknowledge that the test utilized by the Fifth Circuit to establish standing in an antitrust suit is the "target area" test. *See Larry R. George Sales Co. v. Cool Attic Corp.*, 587 F.2d 266 (5th Cir. 1979); *Donovan Construction Co. of Minnesota v. Florida Telephone Corp.*, 564 F.2d 1191, 1192 (5th Cir. 1977); *Jeffrey v. Southwestern Bell*, 518 F.2d at 1131. The parties differ, however, on whether the Clinic is a "person (whether corporation or individual) ... against whom the conspiracy is aimed" or, stated in economic terms, "that [it] is within the sector of the economy which is endangered by a breakdown of competitive conditions in a particular industry." *Id.* at 1131.

As the Fifth Circuit explained in *Jeffrey*, the "target area" test arose as a means of limiting the class of potential treble-damage plaintiffs to those persons who could most adequately vindicate the purposes of the antitrust laws. The fact that a person suffers an injury to his pock-

---

**3.** Two circuits have announced conflicting constructions of the Supreme Court's decision in *McLain*. *Compare Western Waste Service Systems v. Universal Waste Control*, 616 F.2d 1094 (9th Cir. 1980) with *Crane v. Intermoun-*

*tain Health Care, Inc.*, 637 F.2d 715 (10th Cir. 1980). See also *Alabama Homeowners, Inc. v. Findahome Corporation*, 640 F.2d 670 (5th Cir. 1981).

etbook because of antitrust violations provides no basis for standing when the person was not the "target" of the antitrust activity but was "indirectly" or "secondarily" injured. *Id.* 1131.

■ In their responsive briefs, the plaintiffs argue that the Clinic, being engaged in the practice of urological surgery, was within the sector of the economy threatened by the defendants' anti-competitive activity. In other words, plaintiffs claim that both the Clinic and Dr. McDonald, were direct targets of defendants' antitrust activities. A review of plaintiffs' complaint shows that, while it is true that the Clinic's business is urological surgery, the two applications for staff privileges were made by Dr. McDonald individually. Plaintiffs' complaint attributes the denial of his applications to a conspiracy on the part of defendants to keep Dr. McDonald from practicing a less-expensive surgical procedure developed by him. There is no allegation in the complaint that the other doctors employed by the Clinic utilize this surgical procedure. Viewing the facts as alleged by plaintiffs to be true, *Tugboat, Inc. v. Mobile Transportation*, 534 F.2d 1172, 1173 (5th Cir. 1976), the only conclusion to be drawn from plaintiffs' allegations is that the alleged conspiracy of defendants to deny staff privileges to Dr. McDonald was directed solely at Dr. McDonald.

The Clinic's allegations in paragraph 34 of the complaint that it will lose revenue and that it had to abandon plans to open a new office in north Atlanta because of the limitations imposed by the defendants on Dr. McDonald's medical practice are secondary "pocketbook" injuries. As such they fail to provide the Clinic with standing to sue. See *Jeffrey v. Southwestern Bell, supra*, at p. 1131.

The Southern District of Indiana reached a similar conclusion in *Ronald A. Brown and Ron Brown Real Estate, Inc. v. Indianapolis Board of Realtors*, [1977–1] Trade Cases, §§ 61,435, 71,611 (1977). In that case Ronald A. Brown, the president and principal stockholder of Ron Brown Real Estate, Inc., applied for and was refused membership in defendant real estate association. The court concluded in that case that "The corporate plaintiff Ron Brown Real Estate, Inc. has no standing to assert any claim against the defendant Board, even were it able to establish some financial disadvantage as the result of a denial of membership to the individual plaintiff. The wrong, if any, was to such individual." *Id.* at page 71,614.

In summary, the defendants' motions to dismiss are GRANTED as to plaintiff Clinic, the Clinic not having been within the "target area" of defendants' alleged antitrust activities. The court will withhold its ruling on the motions to dismiss with regard to plaintiff Dr. McDonald until the parties have submitted additional briefs in accordance with the court's instructions above. At that time, the court will, if appropriate, rule on the viability under Federal Rule of Evidence 501 of the Georgia privilege for medical review boards.

The clerk is hereby ordered to resubmit this case on July 2, 1981.

## ON MOTIONS TO DISMISS COUNT I

On June 10, 1981, this court granted the defendants' motions to dismiss[1] Count II of the plaintiffs' complaint on the ground that the McDonald Urology Clinic, P.C. lacked standing to pursue its antitrust claim. The court also directed the parties to submit supplemental briefs discussing the effect, if any, of *McLain v. Real Estate Board of New Orleans*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980) (hereinafter *McLain*) on the jurisdictional viability of Count I, Dr. McDonald's antitrust claim. All parties, including Georgia Baptist whose motion was

---

1. At the time of the court's June 10, 1981, order only defendants St. Joseph's Hospital, Franklin, and Staton had moved to dismiss plaintiffs' antitrust claims in Counts 1 and 2. Defendant Georgia Baptist Hospital moved to dismiss counts I and II on June 16, 1981. The court's ruling on June 10th dismissing Count II is fully determinative of Georgia Baptist's motion with respect to that count. Accordingly, Georgia Baptist's motion to dismiss Count II is GRANTED for the reasons previously stated in the court's order of June 10, 1981.

filed later, have complied with this directive and the motions to dismiss Count I of all four defendants are now before the court for decision. For the reasons given below, these motions are DENIED. As a preliminary matter, the court GRANTS Dr. McDonald's motion to amend his complaint by adding new paragraphs 33A and 33B.

■ McDonald's claims are brought under Sections 1 and 2 of the Sherman Act and Section 2 of the Clayton Act. Jurisdiction exists under the Sherman Act whenever the challenged activity occurs in the flow of interstate commerce or whenever a purely local activity substantially affects interstate commerce. *McLain*, 444 U.S. at 242, 100 S.Ct. at 509; *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 743 n.2, 96 S.Ct. 1848, 1852, 48 L.Ed.2d 338 (1976) (hereinafter *Hospital Building Co.*); *Crane v. Intermountain Health Care*, 637 F.2d 715, 720 (10th Cir. 1981) (hereinafter *Crane*).[2] As the Supreme Court stated in *Hospital Building Co.*, 425 U.S. at 742 n.1, 96 S.Ct. at 1851 n.1, the critical inquiry on a motion to dismiss, regardless of whether the dismissal motion is based on Rule 12(b)(1) or Rule 12(b)(6), is "into the adequacy of the nexus between the [defendants'] conduct and interstate commerce that is alleged in the complaint." In addition to alleging this interstate commerce nexus, the plaintiff in an antitrust action must also show "as a matter of practical economics" that the activities of defendants which have allegedly been infected by antitrust violations have a not insubstantial effect on the interstate commerce involved. *McLain*, 444 U.S. at 246, 100 S.Ct. at 511.

In their motions, the defendants argue that McDonald has failed to satisfy the nexus requirement for jurisdiction. They argue: (1) that McDonald has alleged only the effects on *the Clinic's* activities in interstate commerce which were caused by the defendants' alleged antitrust activity, *see*

*Hospital Building Co.*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338; and (2) that the pleading test set forth in *McLain* is not satisfied by the allegations in his complaint showing the effects of the defendants' general or overall business on interstate commerce. *See Crane*, 637 F.2d at 723–724.

In *Hospital Building Co.* one local hospital sued another local hospital alleging a conspiracy on the part of the latter to restrain trade and commerce in the furnishing of medical and surgical hospital services and to monopolize the hospital business in that locale. The Supreme Court, reversing the decision of the Fourth Circuit, found that the plaintiff hospital had identified four relevant aspects of its activity in interstate commerce which were effected by the defendants' alleged conspiracy to restrain and monopolize and had, therefore, established a nexus with interstate commerce sufficient to support federal jurisdiction. *Hospital Building Co.*, 425 U.S. at 741, 96 S.Ct. at 1850. The court also found that, "fairly read," the combination of these alleged factors was "certainly sufficient to establish a 'substantial effect' on interstate commerce under the Act." *Id.*, 425 U.S. at 744, 96 S.Ct. at 1852.

In this case, McDonald alleges that the defendants' conduct reveals a conspiracy to prevent him from practicing urological surgery in the northern and eastern parts of Atlanta. He alleges that as a result of this illegal activity of defendants, he was denied staff privileges at St. Joseph's and Georgia Baptist and that his applications at three other hospitals were either withdrawn or refused. He alleges that the hospital bed space at these five hospitals comprises 50% of the available space in the northern and eastern sectors of Atlanta and concludes that "the defendants have effectively denied Dr. McDonald his right to practice medicine in this area of Atlanta as a direct result of the lack of available facilities for

---

**2.** Jurisdiction under the Clayton Act is less broad and exists only if the challenged activity is "in commerce." *See McLain*, 444 U.S. at 241–42, 100 S.Ct. at 508–509; *United States v. American Building Maintenance Industries*, 422 U.S. 271, 278–283, 95 S.Ct. 2150, 2155–2158, 45 L.Ed.2d 177 (1975). This court has made no determination as to whether jurisdiction may exist over plaintiff's Sherman Act claims but not over plaintiff's claim under the Clayton Act since this point was not argued by the defendants.

his patients." McDonald also alleges that defendants' attempts to control the practice of urological surgery in this market constitutes a direct restraint on trade and represents a group boycott against him. In addition, McDonald alleges that through their conspiracy, combination or understanding to suppress his practice of an unique procedure of urological surgery (cryosurgery), the defendants have attempted to fix prices for urological surgery in the relevant market.

In identifying the channels of interstate commerce impeded by the defendants' conduct, McDonald adopts in paragraph 33 of his complaint, the allegations set forth by the plaintiff in *Hospital Building Co.* He alleges:

"1. Clinic's equipment and furniture and other necessary operating items in large part come from out-of-state suppliers.

2. Clinic provides services for patients who reside in states other than Georgia.

3. A large amount of revenue both in terms of dollars and percentages originates with third parties and insurance companies whose home offices are located outside the State of Georgia.

4. A large amount of the clinic's revenue is generated by medicare, medicaid, and other federally supported programs."

As defendants correctly point out, each of these allegations is stated in terms of the Clinic's activities in interstate commerce. However, on motion to dismiss on jurisdictional grounds, the pleadings must be viewed in the light most favorable to plaintiff. *Western Waste Service Systems v. Universal Waste Control*, 616 F.2d 1094, 1095 (9th Cir. 1980). In Paragraph 28 of his complaint, Dr. McDonald alleges that he is a member of a four-doctor professional corporation organized to practice urological surgery. He then alleges that "Although patients of the plaintiff clinic *and plaintiff Dr. McDonald* reside throughout the United States, the actual treatment of such patients occurs in the northern and eastern parts of Atlanta. (emphasis added)." Thus, fairly read, McDonald's allegation in

subsection 2 of paragraph 33 includes, at least inferentially (see *Crane*, 637 F.2d at 725), an allegation that the interstate treatment of patients by McDonald has been affected by defendants' alleged antitrust activity. McDonald has, therefore, minimally satisfied the pleading requirement of *McLain*, 444 U.S. at 242, 100 S.Ct. at 509, that "jurisdiction may not be invoked under the statute unless the relevant aspect of interstate commerce is identified;" and the court is not left with the impermissible burden to presume an interrelationship between McDonald's practice of medicine and some unspecified aspect of interstate commerce. *See also Crane*, 637 F.2d at 726, n.4; *Malini v. Singleton & Associates*, 516 F.Supp. 440, 442–43 (S.D.Tex.1981).

Viewed in this context, this case bears no similarity to *Alabama Homeowners, Inc. v. Findahome Corporation*, 640 F.2d 670 (5th Cir. 1981). In that case, the plaintiff tried to "bootstrap" his allegation of a nexus between the defendants' alleged illegal activity and a relevant aspect of interstate commerce by proving the interstate commerce conduct of third parties. *Id.* at 674 n.6.

In *McLain*, 444 U.S. at 242, 100 S.Ct. at 509, the Supreme Court held that: "To establish jurisdiction a plaintiff must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings either that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce. (citation omitted.)" Applying that rule to the facts of *McLain*, the court held that "To establish the jurisdictional element of a Sherman Act violation it would be sufficient for petitioners to demonstrate a substantial effect on interstate commerce generated by respondents' brokerage activity. Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged conspiracy to fix commission rates, or by those other aspects of respondents'

activity that are alleged to be unlawful." *Id.* at 242–43, 100 S.Ct. at 509–10.

The circuit courts have found this language in *McLain* to be ambiguous and their interpretations as to the meaning of *McLain* are not uniform. The Ninth Circuit appears to construe *McLain* as holding that Sherman Act jurisdiction is satisfied if interstate commerce is substantially affected by the defendants' general or overall business, without regard as to whether his alleged unlawful activity caused any such effect. *See Community Builders, Inc. v. City of Phoenix*, 652 F.2d 823 (9th Cir. 1981); *Palmer v. Roosevelt Lake Log Owners Assn., Inc.*, 651 F.2d 1289 (9th Cir. 1981); *Western Waste Service Systems v. Universal Waste Control*, 616 F.2d 1094 (9th Cir. 1980). Other circuits have followed the lead of the Tenth Circuit in *Crane v. Intermountain Health Care*, 637 F.2d 715 (10th Cir. 1981), and construe *McLain* to require that the linkage between the effect on the relevant channel of interstate commerce and the defendant's allegedly unlawful conduct be pled. *See Cordova & Simonpietri Ins. Agency v. Chase Manhattan Bank N.A.*, 649 F.2d 36, 44 (1st Cir. 1981); *Malini v. Singleton & Associates*, 516 F.Supp. 440 (S.D.Tex.1981); *Heille v. City of St. Paul Minn.*, 512 F.Supp. 810 (D.Minn.1981).

After a thorough study of these cases and the pleadings in this case, the court has concluded that resolution of these motions to dismiss is not dependent on the court's deciding which circuit court construction of *McLain* is correct. Rather, even though Paragraph 33A contains only allegations as to the effects of the defendant hospitals' general business activities in interstate commerce, Paragraph 33B expressly alleges a nexus between the defendants' challenged activity and the purchase of supplies and equipment in interstate commerce for urological surgery. In relevant part, paragraph 33B provides: "The actions of these defendants have impeded the free flow of these goods or services in interstate commerce by denying McDonald staff privileges . . . [T]he purchase of out-of-state supplies and equipment (especially that related to cryosurgery) will decline. . . ."

In response to the defendants' motions to dismiss, McDonald has introduced certain evidence relating to the hospital defendants which was revealed in the discovery conducted up to this point. This evidence shows that in 1979 more than 50% of Georgia Baptist's supplies and equipment (over $8.5 million) come from out of state suppliers, that Georgia Baptist treated 348 nonresident patients, and that almost 70% of its revenues were derived from the federal government or out of state insurance companies. With regard to St. Joseph's, the figures for 1979 show that St. Joseph's treated 223 nonresident patients with almost 40% of its gross revenues received from governmental agencies, and other payments from over 100 insurance companies. Plaintiff has not introduced any figures establishing the percentages of those figures which are attributable to urological surgery.

At the jurisdictional stage, it is not necessary to present an elaborate analysis of the interstate impact, but "only an allegation showing a logical connection as a matter of practical economics between the unlawful conduct and interstate commerce." *Crane*, 637 F.2d at 723 (construing *McLain*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980)). It is alleged in the pleadings that the practice of urological surgery requires the hospitalization of patients. As a practical matter of economics, hospitalization generally requires the use and consumption of supplies and services provided by the hospital. Under these circumstances, the court cannot hold at this stage in the proceedings that McDonald may not be able after further discovery to establish a not insubstantial effect on interstate commerce. *See McLain*, 444 U.S. at 246, 100 S.Ct. at 509; *Corey v. Look*, 641 F.2d 32, 38 (1st Cir. 1981); *Crane*, 637 F.2d at 725; *Malini v. Singleton & Associates*, 516 F.Supp. at 442–43 (argument that number of patients is static and that doctor's addition to staff would not effect hospital's purchase of supplies not meritorious.) *Compare Cordova & Simonpietri Insurance Agency, Inc. v. Chase Manhattan Bank N.A.*, 649 F.2d 36,

**130**

45–46 (1st Cir. 1981). *See also Heille v. City of St. Paul, Minnesota*, 512 F.Supp. 810, 812 n.3 (D.Minn.1981) (*McLain* presumably introduces a two stage jurisdictional determination).

The Supreme Court has repeatedly held that dismissal of a complaint for failure to state a claim is inappropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *McLain*, 444 U.S. at 246, 100 S.Ct. at 509; *Hospital Building Co.*, 425 U.S. at 746, 96 S.Ct. at 1853; *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). This rule applies with equal force to antitrust claims where the existence of a demonstrable nexus between the defendant's activity and interstate commerce is an element of the cause of action, *McLain*, 444 U.S. at 246, 100 S.Ct. at 509, and where the required "proof is largely in the hands of the alleged conspirators", *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). Even though not artfully pleaded, dismissal of McDonalds' claim at this stage in the proceedings is under this standard inappropriate. *See Corey v. Look*, 641 F.2d 32, 38 n.10 (1st Cir. 1981) (courts should not revert to the technical concepts of pleading to solve the inherent difficulties of antitrust action). The court's ruling at this stage implies no ruling on the merits of McDonald's claim and does not foreclose any future proceedings, consistent with this opinion, which may be appropriate. *See Hospital Bldg. Co.*, 425 U.S. at 747 n.5, 96 S.Ct. at 1853 n.5; *Corey v. Look*, 641 F.2d at 38; *Malini v. Singleton & Associates*, 516 F.Supp. at 445.

In summary, McDonald's motion to amend is GRANTED; Georgia Baptist's motion to dismiss is GRANTED as to Count II and DENIED as to Count I; the motions to dismiss of St. Joseph's, Franklin and Staton are DENIED as to Count I. Determination of the argument advanced by some defendants that McDonald lacks standing to complain of any alleged price fixing by defendants is premature on the basis of the record at this time. The court will schedule, at a time to be set in the future, a hearing on the evidentiary motion regarding privilege now pending before the court.